Samuel B. KEENE, Admr. Est.
Lorenzo Lowe

v.

**METHODIST HOSPITAL.**

Civ. No. 5127.

United States District Court,
N. D. Indiana,
Hammond Division.

March 17, 1971.

Byron Chudom, Gary, Ind., for plaintiff.

Thomas H. Clifford, Gary, Ind., for defendant.

## MEMORANDUM OF OPINION

BEAMER, District Judge.

Plaintiff Samuel B. Keene is the administrator of the Estate of Lorenzo Lowe, Deceased. Lorenzo Lowe received head injuries in a fight shortly after midnight on the morning of December 25, 1966. At about 2:00 a. m. on December 25, Lorenzo Lowe was taken to the emergency room of the defendant Methodist Hospital of Gary with a large hematoma about his right eye. Four skull X-rays were taken of Lorenzo Lowe, he was examined by Dr. David Templin, and he was released without treatment. Dr. Sidney Choslovsky, a radiologist, examined the X-rays sometime between 8:00 a. m. to 10:00 a. m. on December 25, 1966. Dr. Choslovsky noted the possibility of a fracture of the skull and suggested additional X-rays be taken. These conclusions were dictated into a machine and were transcribed two days later on December 27. The findings and recommendations of Dr. Choslovsky were not otherwise communicated to the attending physician, the Hospital staff, the Hospital adminis-

tration, the decedent, or the decedent's family.

Shortly after noon on December 25, Lorenzo Lowe was discovered unconscious lying next to his bed. He was returned to the Hospital, where emergency surgery was performed. Lorenzo Lowe was found to have a skull fracture and a large epidural hemorrhage. Lowe's condition continued to deteriorate after surgery and at 8:30 p. m. he died.

The Court finds that Lorenzo Lowe would not have died from his head injuries if he had been treated for a skull fracture during the morning of December 25, 1966.

■ It is clear from the evidence at trial that Lorenzo Lowe should not have been released from the Hospital on his initial visit during the morning of December 25, 1966. Certainly Dr. Templin, the treating physician, was negligent in failing to discover Lowe's skull fracture and in allowing him to return home. However, this negligence in the diagnosis and treatment of Lowe is not attributable to the defendant Hospital since Dr. Templin was acting at the time as an independent contractor and a hospital is not responsible for such medical acts. Iterman v. Baker, 214 Ind. 308, 15 N.E. 2d 365 (1938); Huber v. Protestant Deaconess Hospital Association, 127 Ind.App. 565, 133 N.E.2d 864 (1956). Despite various allegations by the plaintiff, the Court is unable to find any other acts of negligence, during Lowe's initial visit to the Hospital, which proximately caused or proximately contributed to cause his death.

The evidence disclosed that the X-rays which were taken of Lorenzo Lowe at approximately 3:00 a. m. on December 25 were examined by Dr. Choslovsky (one of three Methodist Hospital radiologists) between 8:00 and 10:00 a. m. on the morning of the 25th. At that time, the radiologist became aware of the possibility of the skull fracture and noted that additional X-rays should be taken. In accordance with Hospital procedures, Dr. Choslovsky dictated his report onto a tape. The tape was not transcribed until two days later. Plaintiff contends, and the Court finds, that had the report of the radiologist been immediately relayed to the treating physician, to the Emergency Room staff, or to the Hospital administration, it would probably have been possible to perform surgery on Lorenzo Lowe before the damage to his brain had been so serious that he could not recover.

The defendant Methodist Hospital of Gary had entered into a contract with Dr. Kazys Ambrozaitis appointing him Director of the Division of Radiology of the Hospital. Dr. Ambrozaitis was to "assume and discharge all responsibility for the administrative and professional direction and management of the Division of Radiology" and to "supervise and be responsible for all professional and administrative functions of the Division of Radiology". Under the agreement, the Hospital provided all equipment and supplies for the Division of Radiology, provided Hospital space for the personnel in the Division, and paid all non-professional employees working in the Division. The Hospital billed for the services of the radiologist, and remitted approximately one-third of the fees to the radiologist. Dr. Ambrozaitis was permitted to take on partners, such as Dr. Choslovsky, who met with the approval of the Hospital. None of these radiologists could perform work outside of the Methodist Hospital without the written consent of the Hospital. The radiologists had no expenses incidental to their work at the Hospital except for the obligation to carry their own malpractice insurance.

■ Although a hospital cannot practice medicine and is not responsible for the medical acts performed by physicians, it is responsible for the administrative and ministerial duties requisite to the operation of a hospital. The manner in which reports of physicians and radiologists are recorded, and the channel through which the information is conveyed, are administrative matters. The fact that the defend-

ant Hospital has delegated the administration of one of the divisions of the Hospital to Dr. Ambrozaitis does not absolve the Hospital from its responsibility to its patients. It is the duty of the Hospital to adopt procedures which would ensure that the opinion of a radiologist showing the possibility of a severe injury would be immediately conveyed to the proper persons. Methodist Hospital is responsible for the negligent failure of its administrators to provide such a procedure.

■ The Court is also of the opinion that Dr. Choslovsky was negligent in failing to immediately bring his report to the attention of the proper persons. Dr. Choslovsky knew that there would be a delay in the transcription of his report under the normal Hospital procedures. Given the fact that these procedures were inadequate, when Dr. Choslovsky noted the possibility of a serious injury, due care would have required that he telephone his report to the attending physician, the Emergency Room, or the Hospital administration.

The defendant contends that it is not responsible for the negligence of Dr. Choslovsky since he is an independent contractor. It is the opinion of this Court that the relationship of Dr. Choslovsky to the defendant Hospital was much more nearly that of an employee working on a piece-work basis, rather than that of the typical independent contractor. Aside from the fact that Dr. Choslovsky had a medical degree, all the other factors involved in his work would indicate that he was an employee of the Hospital. However, in attempting to determine whether the defendant Hospital is responsible for a particular act on the part of Dr. Choslovsky, it is more important to look at the nature of the act than it is to label the general relationship between the radiologist and the Hospital.

In Fowler v. Norways Sanitorium, 112 Ind.App. 347, 42 N.E.2d 415 (1942), the Court recognized the distinction between administrative acts and medical acts. Under the test used in that case, the reading of an X-ray would be a medical act requiring the professional opinion of a licensed radiologist. However, the decision on how to communicate that opinion is not a medical act that would cause the person so acting to be guilty of the offense of practicing medicine without a license. In *Fowler* the Court recognized that a hospital was responsible for the administrative acts of its employees even though the employees were directed by a physician. The logical extension of this doctrine is to hold a hospital responsible for the negligence of a physician or radiologist when he is performing non-medical, administrative acts. *See* Annot., 69 A.L.R.2d 305 (1960).[1] Since the act of Dr. Choslovsky in communicating his report was administrative rather than medical, the Court finds that the defendant Hospital is responsible for Dr. Choslovsky's negligence.

It is the opinion of this Court that the negligence of the Hospital in failing to ensure that the opinion of Dr. Choslovsky was promptly relayed to the proper persons, and Dr. Choslovsky's negligence, attributable to the Hospital, in failing to promptly relay the report, proximately contributed to the death of Lorenzo Lowe.

---

1. "Whether, as theoretical matter, the distinction between 'medical' and 'administrative' acts goes to the status of the physician as an agent of the hospital or, on the other hand, permits the imposition of liability on the hospital as an exception or limitation of the rule that an employer of an independent contractor is not liable for the latter's misconduct, is of minor importance so far as the outcome of the cases is concerned. In either event the hospital is liable if the negligence charged involved 'administrative' rather than 'medical' misconduct." Annot., 69 A.L.R.2d 305, 317 n. 3 (1960).