James F. HANSFORD, Appellant–Defendant,

v.

In re The Dissolution of MAPLEWOOD STATION BUSINESS PARK, a Partnership, David Ruckman, Stephen E. Broadus and David Hardy, Appellees–Plaintiffs.

No. 22A05–9211–CV–00423.

Court of Appeals of Indiana, Fifth District.

Sept. 20, 1993.

Rehearing Denied Nov. 4, 1993.

James F. Hansford, pro se.

Larry J. Schad, New Albany, for appellees-plaintiffs.

SHARPNACK, Chief Judge.

James F. Hansford appeals the trial court's judgment in favor of David Ruckman, Stephen E. Broadus, and David Hardy in their action to dissolve their partnership

with Hansford and to distribute the partnership's assets. We affirm.

The facts most favorable to the judgment are as follows. In 1988, Ruckman, Broadus, Hardy, and Hansford (hereinafter, "the partners") agreed to purchase a tract of approximately twenty acres in Edwardsville, Indiana. The partners intended to develop, subdivide, and sell parcels of the property, which was to be called Maplewood Station Business Park. The partners received financing from Old Capital Bank of Corydon, Indiana, in the full amount of the purchase price ($105,000). The loan was secured by the property and the personal indemnifications of the partners. Because the mortgage was for the full purchase price, the partners did not need to put up any money initially, and it was agreed at that time that partnership profits would be divided based on the amount of capital each partner envisioned subsequently contributing to the project. Ruckman and Broadus were to participate at 32.5% each, and Hardy and Hansford at 17.5% each. Beginning in 1989, the partners filed partnership tax returns with the IRS indicating each partner's share in the business.

The partners anticipated that they would be able to borrow additional development funds to pay the partnership expenses and the costs of constructing roadways and improvements. In May, 1989, the Partners approached Old Capital Bank [1] for additional funds, but were refused. Ruckman, Broadus, and Hardy then agreed to contribute their own funds to cover the development costs, including interest due on the mortgage. At this point, however, Hansford refused to contribute any funds, and the remaining three partners paid his share.

Over the next three years, the partners paid down the original note as parcels were sold. On May 28, 1991, the original note matured, and the bank wanted updated financial statements and new signatures on a new note for the remaining debt of $55,000. Hansford refused to sign the new

note or to provide the financial statements. The other partners then paid the remaining balance and interest on the note and received an assignment of the note and mortgage in return. In effect, Ruckman, Broadus, and Hardy then owned a $55,000 mortgage with the partnership as mortgagor.

On September 9, 1991, Ruckman, Broadus, and Hardy filed a petition for dissolution of partnership. Hansford, proceeding pro se, filed an answer and counterclaim on October 9, 1991. On December 16, 1991, Hansford filed a motion for order of accounting. On January 29, 1992, Ruckman, Broadus, and Hardy filed their accounting. Upon the motion of Ruckman, Broadus, and Hardy, and over Hansford's objection, a pre-trial conference was held on February 14, 1992, at which a date for final hearing was set and Ruckman, Broadus, and Hardy were asked to provide additional financial information, which they did on February 21, 1992. On May 29, 1992, the final hearing was held, at which Hansford filed a motion for default on his counterclaim. The trial court allowed the developers to enter their general denial to the counterclaim orally. After the hearing, the court requested the parties to file proposed findings of fact and conclusions of law. On July 13, 1992, the court adopted the findings of fact and conclusions of law proposed by Ruckman, Broadus, and Hardy. On July 13, 1992, Hansford filed a motion to partition the partnership property. On July 28, 1992, the court entered its judgment.

Hansford, who has continued pro se on appeal, filed his praecipe on August 27, 1992.

Hansford presents nine issues for our review, which we restate as:

1. whether the trial court committed reversible error in finding that Ruckman, Broadus, Hardy, and Hansford had formed a partnership;

2. whether the trial court's order that contributions made by Ruckman, Broa-

---

**1.** During this period, Old Colony Bank merged with Indiana National Bank (INB); the record

does not indicate precisely when this occurred.

dus, and Hardy to satisfy Hansford's debt to the partnership be recovered from the proceeds of the sale of the partnership assets is contrary to law;

3. whether the court's order that proceeds of the sale of the partnership assets be paid to Ruckman, Broadus, and Hardy as assignees of the INB mortgage is contrary to law;

4. whether the trial court's appointment of a commissioner to convey Hansford's interest in the partnership assets is contrary to law;

5. whether the trial court committed reversible error in failing to follow pretrial procedure under Ind.Trial Rule 16;

6. whether the trial court committed reversible error in failing to rule on Hansford's motion for partition;

7. whether the trial court deprived Hansford of his right to cross-examine witnesses;

8. whether the trial court's judgment is outside the scope of the complaint; and

9. whether the trial court committed reversible error in allowing entry of a general denial at trial in response to Hansford's counterclaim.

### Issue One

■ Hansford argues that the trial court committed reversible error in finding that a partnership existed between the parties. He contends, rather, that the four purchased the land as tenants-in-common.

When reviewing a trial court's findings of fact and conclusions thereon, we apply a two-tier standard of review: we inquire whether the evidence supports the findings and whether the findings support the judgment. T.R. 52(A); *National Advertising Co. v. Wilson Auto Parts, Inc.* (1991), Ind. App., 569 N.E.2d 997. We neither reweigh the evidence nor rejudge the credibility of the witnesses and, unless the evidence viewed in a light most favorable to the trial court leads uncontrovertibly to a conclusion opposite to the one reached, we will not reverse the determination of the trial court.

*Kokomo Veterans, Inc. v. Schick* (1982), Ind.App., 439 N.E.2d 639.

■ The Uniform Partnership Act ("UPA") defines "partnership" in Ind.Code § 23-4-1-6 as an "association of two (2) or more persons to carry on as co-owners a business for profit." The UPA also provides guidelines for determining the existence of a partnership in I.C. § 23-4-1-7, which reads, in pertinent part:

"(2) Joint tenancy, tenancy in common ... or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property;

"(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

"(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business...."

I.C. § 23-4-1-7(2)-(4). Case law provides further guidelines. A contract, either express or implied, is essential to the formation of a partnership. *J.M. Schultz Seed Co. v. Robertson* (1983), Ind.App., 451 N.E.2d 62. Where a person is to share in the profits of a business, it is evidence that he is a partner in the business regardless of whether he actually receives any profits; if profit sharing is established it is not essential to show that there was an agreement to share in the losses. *Endsley v. Game–Show Placemats, Ltd.* (1980), Ind. App., 401 N.E.2d 768.

The evidence of the existence of a partnership in the present case is as follows: Hansford, Ruckman, Broadus, and Hardy agreed in 1988 to form a business entity known as Maplewood Station Business Park for the purposes of developing, subdividing, and selling parcels of property. Each of the four men was to receive a specified percentage of the business's profits. The business held a bank account on which each of the four men could write checks. Partnership tax returns were filed

beginning with the 1988 tax year, showing Hansford's share of the partnership's assets and liabilities as 17.5%. We find this evidence sufficient to satisfy the statutory guidelines for determining the existence of a partnership and to support the trial court's finding that the parties had formed a partnership.

Hansford argues in the alternative that even if a partnership did exist, the terms of the partnership were breached by Ruckman, Broadus, and Hardy early in the venture by their having made improper withdrawals from the partnership account. As Hansford fails to support this argument with evidence in the record of financial improprieties, we find this argument to be without merit.

### Issue Two

■ Hansford argues that the trial court's order that contributions made by Ruckman, Broadus, and Hardy to satisfy Hansford's debt to the partnership be recovered from the proceeds of the sale of the partnership assets is contrary to law.

Under I.C. § 23–4–1–32(1)(c) and (d), the court is authorized to dissolve a partnership by decree when "[a] partner has been guilty of conduct that tends to affect prejudicially the carrying on of the business" or when "[a] partner willfully or persistently commits a breach of the partnership agreement, or otherwise acts in matters relating to the partnership business so that it is not reasonably practicable to carry on the business in partnership with that partner." Indiana Code § 23–4–1–38 provides, further, that:

> "(1) When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his copartners and all persons claiming through them in respect of their interests in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners. But if dissolution is caused by expulsion of a partner, bona fide under the partnership agreement

and if the expelled partner is discharged from all partnership liabilities, either by payment or agreement under section 36(2) of this chapter, he shall receive in cash only the net amount due him from the partnership.

> "(2) When dissolution is caused in contravention of the partnership agreement the rights of the partners shall be as follows:

> (a) Each partner who has not caused dissolution wrongfully shall have:

> (I) All the rights specified in paragraph (1) of this section, and

> (II) The right, as against each partner who has caused the dissolution wrongfully, to damages for breach of the agreement.

> \*　　\*　　\*　　\*　　\*　　\*

> (c) A partner who has caused the dissolution wrongfully shall have:

> (I) If the business is not continued under the provisions of paragraph (2)(b) all the rights of a partner under paragraph (1), subject to clause (2)(a)(ii), of this section."

I.C. § 23–4–1–38. By refusing to contribute his share of the partnership expenses (Findings # 9 and # 11) and by his unwillingness to execute documents on behalf of the partnership, as evidenced by his refusal to execute the renewal note (Finding # 22), Hansford's conduct has satisfied the requirements of I.C. § 23–4–1–32(c) and (d) in that he has been guilty of conduct that tended to affect prejudicially the carrying on of the business and made it impracticable for the other partners to continue in business with him. Indeed, Hansford's refusal to sign the renewal note made it literally impossible for the business to continue without the action taken by the remaining partners. This being the case, the court properly ordered the partnership property applied to discharge the partnership's liabilities and Hansford's debt to the remaining partners, which consisted of their contributions to cover his obligations to the partnership. As authorized by I.C. § 23–4–1–38(1), the court properly ordered

that Hansford receive in cash only the net amount due him from the partnership.

■ Hansford contends that he was justified in refusing to contribute funds to the partnership because Ruckman, Broadus, and Hardy violated the provisions of the UPA in excluding Hansford from the affairs of the venture by withdrawing large sums from the partnership account for personal use and by refusing Hansford access to partnership records or information. (Appellant's Brief at 30; Reply Brief at 36.) Hansford presented no evidence to support these contentions at trial, and it is insufficient on appeal merely to point us to pages in the record containing lists of ledger items in the account submitted by Ruckman, Broadus, and Hardy and to an allegation contained in Hansford's own affidavit. Hansford has failed to show that the court's findings were insufficiently supported by evidence or that its judgment was contrary to law.

### Issue Three

■ Hansford argues that the court's order that proceeds of the sale of the partnership assets be paid to Ruckman, Broadus, and Hardy as assignees of the INB mortgage is contrary to law. Hansford contends that the only remedy available to Ruckman, Broadus, and Hardy as assignees of the mortgage was foreclosure.

The mortgage was a partnership liability as well as a liability of the four partners individually. When Hansford refused to sign the renewal note, INB demanded payment in full. Facing a bank foreclosure on the property, Ruckman, Broadus, and Hardy paid the outstanding balance to the bank in exchange for an assignment of the note. Ruckman, Broadus, and Hardy then held the mortgage against the partnership, and, as a partner, Hansford continued to owe the partnership his share of the mortgage debt. An appropriate means for settling the partnership's obligation on the mortgage was the dissolution of the partnership, as explained in our discussion of Issue Two, and the sale and distribution of the partnership assets under I.C. § 23-4-1-40. Hansford's debt to the partnership,

which included his liability for his share of the mortgage debt, was properly satisfied by applying his share of the proceeds of the sale of partnership assets to his share of the partnership debt. The court did not err in so ordering.

### Issue Four

■ Hansford argues that the trial court's appointment of a commissioner to convey Hansford's interest in the partnership assets is contrary to law.

Under Ind.Trial Rule 70(A),

"[i]f a judgment directs a party to execute a conveyance of land, or other property or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done ... by some other person appointed by the court and the act when so done has like effect as if done by the party.... If real or personal property is involved, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of both a judgment and of a conveyance executed in due form of law."

T.R. 70(A). The function and provenance of this rule were explained by Professor Harvey in *Indiana Practice*, Vol. 4:

"Rule 70(A) specifically authorizes the trial court to appoint a commissioner or an appointee to effectuate its orders or judgments....

\* \* \* \* \* \*

After the merger of law and equity, the problems which historically were found in the use of equity's power remained. They were transferred to the 'civil court' and to the 'civil action.' It seems clear that courts of equity had the inherent power to use a court-appointed person to execute its orders, when those orders referred to property and they were acts which were to be performed within the state.... But the important limitation in the use of equity's power was the presence of a property interest,

and either its creation or change or destruction. This was and is important because the presence of property served as a limitation, or a restraint upon the equitable power of the court....

\* \* \* \* \* \*

Indiana law recognizes that various kinds of orders may be carried out through a court-appointed officer or commissioner. When a party is required to execute a deed pursuant to a decree of specific performance, the order may be enforced by a commissioner or court officer authorized to make the conveyance. *Light v. Doolittle*, 77 Ind.App. 187, 133 N.E. 413 (1921) (a decree against a non-resident vendor under contract to see [sic] land)."

4 Harvey, *Indiana Practice* § 70.2 (1987), at 497–98. In other words, T.R. 70(A) embodies the equity court's broad discretion in compelling compliance with a judgment where property interests are involved. *See Tewalt v. Tewalt* (1981), Ind.App., 421 N.E.2d 415. In the present case, the court's appointment of the appellees' attorney, Mr. Schad, as commissioner for Hansford to convey his interest in the real estate if Hansford refused to do so, was within the court's powers under T.R. 70(A).

■ Hansford contends that the court failed to comply with T.R. 53 in its appointment of Mr. Schad as commissioner. Hansford's arguments in this regard are built upon a mistaken foundation. A commissioner under T.R. 70 is empowered to perform a specific act ordered by the court; a master under T.R. 53(A), who may be denominated a commissioner, among other titles, is empowered to act as a surrogate for the court in certain proceedings. A master may order the production of evidence, rule upon the admissibility of evidence, put witnesses under oath, examine them, make a record of the evidence, and generally regulate all proceedings before him. T.R. 53(C). The functions of these two types of court appointees determine the the procedural duties expected of them. A commissioner appointed under T.R. 70 does not have the adjudicatory powers of a master under T.R. 53 and therefore is not required to comply with the many due process safeguards of T.R. 53.

## *Issue Five*

■ Hansford argues that the trial court committed reversible error in failing to issue a detailed pretrial order or otherwise to comply with the requirements of T.R. 16. As Hansford has failed to preserve this issue for appeal by raising a timely objection at trial or prior to the trial, this issue is waived.

The sequence of events relevant to this issue is as follows. On October 17, 1991, Ruckman, Broadus, and Hardy moved for a pre-trial conference. On October 21, 1991, Hansford filed a motion for change of venue from the judge, which was granted, and Judge Donahue qualified and assumed jurisdiction on December 5, 1991. On December 6, 1991, Hansford filed a motion for order of accounting, requesting Ruckman, Broadus, and Hardy to provide a full accounting of the business affairs of Maplewood Station Business Park. On December 13, 1991, the court set the cause for pre-trial conference on January 17, 1992. On December 16, 1991, Ruckman, Broadus, and Hardy filed a new motion for pre-trial conference, which evidently had been mailed on December 12, 1991. On December 16, 1991, Hansford filed an objection to the plaintiffs' motion for pre-trial conference. On December 20, 1991, the court set a hearing on the motion for accounting for January 17, 1992. On December 27, 1991, Ruckman, Broadus, and Hardy requested a continuance of the pretrial conference and hearing on the order of accounting, which was granted until February 14, 1992. Ruckman, Broadus, and Hardy submitted their accounting to the court on January 29, 1992. On February 14, 1992, the pretrial conference and hearing was held over Hansford's objection and a date for trial was set. Also on that date, Hansford filed his objection to plaintiffs' submission of accounting and statement. On February 21, 1992, Ruckman, Broadus, and Hardy filed further financial information concerning the partnership.

In this sequence of events, the only objection made by Hansford to the pre-trial conference was in his pleading of December 16, 1991, in which he asserted that the plaintiffs' request for pre-trial conference was premature because the issues in the case had not been sufficiently revealed as to be limited for trial and because he had not yet received the plaintiffs' accounting. Ruckman, Broadus, and Hardy subsequently requested a continuance, and nearly two months passed before the pre-trial conference took place. During that time, Ruckman, Broadus, and Hardy submitted an accounting to Hansford. The record discloses no further objections from Hansford to the pre-trial conference. Had Hansford believed that he did not have a reasonable opportunity to complete discovery, he might have requested a continuance, which he did not do. Therefore, the court did not err in holding the pre-trial conference over Hansford's objection.

Hansford argues for the first time on appeal that no pre-trial conference of attorneys, as required by T.R. 16(E), was held, and therefore that issue is waived. Hansford argues for the first time on appeal that no pre-trial order was issued, and therefore that issue is waived as well. As the court held in *State Farm Mut. Auto Ins. Co. v. Shuman* (1977), 175 Ind.App. 186, 370 N.E.2d 941:

> "[W]e cannot ignore the fact that State Farm made no objection to the court's failure to enter a pretrial order. Where a pretrial order *has been entered*, a party must make his objections (or a motion to amend) at the outset to any aspect of the order with which he does not agree or else he will be barred from raising the issue on appeal. [citation omitted.] So as to not invite error, a party should be required to make a similar objection (by requesting an order or directing trial motions) to the lack of a pretrial order. By not doing so, State Farm has failed to preserve the issue for appeal."

*Id.,* 370 N.E.2d at 951 (emphasis in original). As Hansford neither objected to the lack of a pre-trial order nor requested a pre-trial order, this issue is waived on appeal.

### Issue Six

 Hansford argues that the court committed reversible error when it failed to rule on his motion for partition.

On July 13, 1992, the court adopted the findings of fact and conclusions of law submitted by Ruckman, Broadus, and Hardy. On that same day, Hansford filed a motion to partition the partnership property. The court subsequently entered its judgment on July 28, 1992 without ruling on the motion. On August 27, 1992, Hansford filed his praecipe initiating his appeal to this court. On November 4, 1992, Hansford filed a praecipe for notice of withdrawal of the case from the trial court because of its failure to rule upon the motion, pursuant to T.R. 53.1. On January 15, 1993, Hansford filed a motion asking the trial court to order the clerk to comply with T.R. 53.1 and a hearing was held on the issue. Over Hansford's objection, the court held all pending motions in abeyance pending the outcome of Hansford's appeal to this court and certified Hansford's T.R. 53.1 motion to the supreme court.

> Under T.R. 53.1, if a court fails "for thirty (30) days to set a motion for hearing or fails to rule on a motion within thirty (30) days after it was heard or thirty (30) days after it was filed, if no hearing is required, upon application by an interested party, the submission of the cause may be withdrawn from the trial judge and transferred to the Supreme Court for the appointment of a special judge."

T.R. 53.1(A). As the trial court failed to rule on Hansford's motion within the statutory period, Hansford properly moved to withdraw the case from the trial court. Likewise, the trial court properly certified Hansford's motion to the supreme court and held all pending motions in abeyance.

Any error on the trial court's part in failing to rule on Hansford's motion for partition must be regarded as harmless, however, because the court had already ruled on the disposition of the property. All issues properly before the court which

could have been determined or which were determined are considered finally adjudicated by the court's judgment, and all parties to the action are bound thereby. *Lear Resources, Inc. v. Uland* (1985), Ind.App., 485 N.E.2d 134. Had Hansford requested partition in his answer and counterclaim, in any other pleading, or at trial, the court would have had an opportunity to adjudicate this theory. Because Hansford did not do so, the issue was waived and the court would have properly denied his motion for partition. However, because the court failed to rule on Hansford's motion, the motion was properly withdrawn and may be held in abeyance pending the outcome of Hansford's appeal.

### Issue Seven

■ Hansford argues that the trial court committed reversible error in allowing "Appellees' counsel to question Hansford in direct examination at the same time as Hansford was attempting to conduct cross-examination." (Appellant's Brief at 28.)

■ During Hansford's pro se direct examination of the first of his three witnesses, he made several assertions of fact. The court interrupted Hansford and stated as follows.

"THE COURT: Let me do something here. This is going to be a bit unusual, but in effect Mr. Hansford, you're conducting cross-examination[2] and testifying. So, let me put you under oath. Raise your right hand to be sworn. Do you swear that the testimony you're giving during these proceedings is the truth, the whole truth and nothing but the truth, so help you, God?

MR. HANSFORD: I do, yes."

(Record, p. 463–64.) Hansford then went on to conduct direct examination and cross-examination of several witnesses, to offer his opinions, to speechify, and to interact freely with the court and appellees' counsel. Hansford was given free reign to question his own witnesses and to cross-examine appellees' witness, with the sole

proviso that he do so under oath. At no time did Hansford make any objection to this arrangement. An appellant cannot sit idly by without objecting, await the outcome of the trial, and thereafter raise an issue for the first time on appeal. *Cheek v. State* (1991), Ind.App., 567 N.E.2d 1192, 1195. This issue is therefore waived.

### Issue Eight

■ Hansford argues that the trial court committed reversible error by rendering judgment outside the scope of the complaint and pleadings. In support of this argument Hansford contends (1) that the complaint did not ask for money, contributions, or advancements, (2) that foreclosure was the only remedy available to Ruckman, Broadus, and Hardy as assignees of the mortgage, and (3) that the judgment did not take into consideration personal withdrawals allegedly made by Ruckman, Broadus, and Hardy.

As to the first of these contentions, we refer to the complaint and the judgment. The complaint asks the court:

"1. for an order dissolving the partnership in an orderly manner;

2. for an accounting to be made as to partnership profits, losses, and affairs;

3. for a proper distribution of the net assets of the partnership; and

4. for such other relief as is necessary and proper in the premises."

(Record, p. 16.) The judgment orders, in pertinent part, that the proceeds of the sale of partnership assets be used to pay debts owing first to creditors other than partners, then to Ruckman, Broadus, and Hardy as assignees of the mortgage, then to Ruckman, Broadus, and Hardy as reimbursement of other funds advanced for partnership business, and then to Ruckman, Broadus, and Hardy as reimbursement of funds due from Hansford. All remaining funds were to be paid to the four partners according to their partnership percentage. (Record, p. 289–90.)

We find that this judgment correctly implements the relevant provisions of the

---

2. In fact, this exchange took place during direct examination conducted by Hansford.

UPA in distributing the partnership assets and thereby grants the relief requested in the complaint.

Under I.C. § 23-4-1-40, the settling of accounts between partners after the dissolution of a partnership encompasses the repayment of partnership debt, including advancements and contributions. Ind.Code § 23-4-1-40(b)(II) specifically authorizes the payment of partnership liabilities owing to partners other than capital and profits. The amount of funds contributed to the partnership by Ruckman, Broadus, and Hardy in Hansford's place is such a partnership liability owing to those three partners.

As to the second of Hansford's contentions, Ruckman, Broadus, and Hardy had no obligation to foreclose on the mortgage against the partnership, as discussed under Issue Three above.

As to the third of Hansford's contentions, Hansford presented no evidence at trial regarding the allegedly improper withdrawals and fails on appeal to point us to evidence in the record to support this contention.

We find no inconsistency between the relief requested in the appellees' complaint and the judgment rendered.

*Issue Nine*

■■■ Hansford argues that the trial court committed reversible error in allowing the Appellees to enter a general denial at trial in response to Hansford's counterclaim.

Under T.R. 6(C), a defendant to a claim or counterclaim must reply within twenty days. Under T.R. 8(D), the effect of a failure to reply to a claim or counterclaim is that the facts alleged in the claim or counterclaim are deemed admitted by the trial court. *See Commercial Credit Corp. v. Miller* (1972), 151 Ind.App. 580, 280 N.E.2d 856. In the present case, Ruckman, Broadus, and Hardy failed to respond to Hansford's counterclaim in a timely fashion, and the court erred in entering their general denial to the counterclaim. However, the court properly denied Hansford's

motion for default judgment on the counterclaim because Hansford's counterclaim contains no factual allegations of sufficient specificity to be admitted by the court.

■■■ Hansford's counterclaim reads in its entirety as follows:

"Defendant complains of the Plaintiffs herein and for his cause of action states: Plaintiffs committed upon Hansford acts of: fraud; constructive fraud; statute of frauds; conversion; illegality; lack of mutuality; mismanagement; incompetence; abandonment; contravention and breach of alleged partnership agreement; misconduct and breach of fiduciary duties."

(Record, p. 19.) Under T.R. 8(A), in order to state a claim for relief, a claim or counterclaim must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Under Indiana's "notice" pleading system instituted in 1970, a pleading need not adopt a specific legal theory of recovery to be adhered to throughout the case; a pleading must, however, plead the operative facts so as to place the defendant on notice as to the evidence to be presented at trial. *Palacios v. Kline* (1991), Ind.App., 566 N.E.2d 573, 576. The Civil Code Study Commission Comments to the 1970 Rule 8 revisions state:

"[I]t is immaterial whether a pleading states 'facts' or 'conclusions' so long as fair notice is given, and the statement of the claim is short and plain. This does not mean that the new rule encourages or promotes sloppy or inane pleadings. Although Rule 8(a) will eliminate many technical requirements of pleading, it is clear that it envisages a statement of circumstances, occurrences, and events in support of the claim presented."

Civil Code Study Commission Comments, in 1 Harvey, *Indiana Practice* (1987), at 367.

Hansford's counterclaim contains no factual statements; it presents a string of legal theories upon which a cause of action may be based, but provides no factual allegations to support them. As no facts were alleged, no facts may be deemed admitted

357

by the plaintiffs' failure to reply to Hansford's counterclaim.

For the reasons stated, the trial court's judgment is affirmed in all respects.

AFFIRMED.

CHEZEM and BARTEAU, JJ., concur.