Elizabeth M. STRYCZEK,
Appellant–Plaintiff,

v.

The METHODIST HOSPITALS,
INC., Appellee–Defendant.

No. 45A05–9704–CV–169.

Court of Appeals of Indiana.

May 27, 1998.

Timothy S. Schafer, Merrillville, for Appellant–Plaintiff.

Peter C. Bomberger, Highland, for Appellee–Defendant.

## OPINION

SHARPNACK, Chief Judge.

Elizabeth M. Stryczek appeals a summary judgment granted to The Methodist Hospitals, Inc. ("Methodist"). She raises two issues for our review which we consolidate and restate as whether the trial court properly granted Methodist's motion for summary judgment. We affirm.

The facts most favorable to Elizabeth follow. In January of 1988, she saw Dr. Bharat Barai, a specialist in chemotherapy, and Dr. Gurbachan Kapoor, a specialist in radiation oncology, to diagnose and treat her illness. Both doctors had staff privileges at Broadway Methodist Hospital.[1] In addition, Dr. Kapoor was the medical director of the Department of Radiation Oncology at Broadway Methodist Hospital. Elizabeth underwent surgery to remove a tumor. Pathologists at Methodist concluded that the tumor was a thymoma. However, Dr. Barai questioned that diagnosis and requested second opinions from outside laboratories including: the Division of Pathology at City of Hope National Medical Center; the Department of Pathology at Yale University; the University of Southern California School of Medicine; and, the Armed Forces Institute of Medicine. The outside pathology reports were returned to Methodist's Department of Pathology department between January 29, 1988 and March 25, 1988. The reports indicated that the tumor was a large-cell lymphoma rather than thymoma.

Based upon the diagnosis of thymoma, Dr. Kapoor prescribed radiation treatments to Elizabeth between February 8, 1988 and February 24, 1988. Elizabeth also received treatments of Cyclophosphamide. On February 25, 1988, Dr. Barai notified Dr. Kapoor of the results from the outside pathology reports. Between March 1, 1988 and September 13, 1988, Dr. Barai treated Elizabeth with chemotherapy agents including Adriamycin and Cyclophosphamide. Upon completion of the chemotherapy treatment, Elizabeth returned to Dr. Kapoor for additional radiation treatments.

On April 7, 1989, Elizabeth suffered a cardiac arrest. On April 30, 1989, Elizabeth underwent surgery to have an Automatic Im-

1. While Dr. Kapoor provided treatments and maintained an office at Broadway Methodist, the record does not indicate the precise location of Dr. Barai's office. According to his deposition, Dr. Kapoor maintained his own corporation, G.S. Kapoor, M.D., Inc., which had an independent contractual agreement with the Division of Radiology, the "mother corporation." Record, p. 109. The Division of Radiology maintained a contractual agreement with Broadway Methodist Hospital. Finally, Broadway Methodist Hospital was a part of The Methodist Hospitals, Inc. Essentially, anyone who was to receive radiation oncology treatments at Methodist would do so through Dr. Kapoor's group.

plantable Cardioverter Defibrillator (AICD) permanently implanted in her body.

On February 2, 1993, Elizabeth filed her medical malpractice complaint against Methodist, Dr. Kapoor, and Dr. Barai. On March 9, 1993, Methodist filed a motion for summary judgment. The trial court granted the motion, but we subsequently reversed the trial court on appeal. *Stryczek v. Methodist Hospitals, Inc.*, 656 N.E.2d 553, 555 (Ind.Ct. App.1995), *reh'g denied, trans. denied, Stryczek v. Barai* (Ind.1996). We held that the "failure to identify specific portions of documents upon which the parties relied to support and to refute summary judgment requires reversal of the trial court's judgment." *Id.* After remand, Methodist filed its second motion for summary judgment on July 9, 1996. On November 5, 1996, the trial court granted the motion.

■ Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The moving party has the initial burden of proving these requirements. *Shumate v. Lycan*, 675 N.E.2d 749, 752 (Ind.Ct. App.1997), *trans. denied*, 683 N.E.2d 595. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; the opponent may not simply rest on the allegations of the pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind. 1992). On appeal, we are bound by the same standard as the trial court and may consider only those matters which were designated at the summary judgment stage of proceedings. *Shumate*, 675 N.E.2d at 752. We do not weigh evidence, but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh'g denied, trans. denied.*

■ Before we address the merits of the summary judgment, we consider Methodist's argument that Elizabeth improperly designated the affidavit of Nurse Judith Stryczek ("Nurse Stryczek").[2] Methodist argues that we are "prohibited from looking" at the affidavit because Elizabeth "designated the entire affidavit including all paragraphs." Appellant's brief, p. 7. In the previous appeal in this case, we held that "[p]arties may no longer designate entire portions of the record, such as depositions, but must instead specifically identify relevant portions of pleadings, depositions and other evidentiary material upon which the party relies." *Stryczek*, 656 N.E.2d at 555 (citing *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993)). We have also held that "unless a document in its entirety is required as designated evidentiary matter, regardless of how concise or short the document is, in order to be properly designated, specific reference to the relevant portion of the document must be made." *O'Connor v. Stewart*, 668 N.E.2d 720, 722 (Ind.Ct.App.1996). Thus, there is no error if, in designating the specific relevant portions of a document, an entire document happens to be designated. *See id.* Here, the designation reads:

"1. Expert witness Affidavit of Judith K. Stryczek, R.N., paragraphs one (1) through and including nine (9), Exhibit 'A', paragraphs one (1) and two (2) showing her qualifications and competency, paragraph three (3) standard of care, paragraph four (4) indicating material reviewed, paragraphs five (5) and seven (7) establishing the deviation of the standard of care, paragraph six (6) establishing causation, paragraph eight (8) damages, paragraph nine (9) confirmation of breach of standard of care and causation and damages, attached to Memorandum in Opposition to Motion for Summary Judgment."

Record, p. 31. This is not a general designation of a document. Rather, this is a designation of specific portions of a document which, as combined, constitutes the entire document. Therefore, Elizabeth did not improperly designate the affidavit of Nurse Stryczek.

On the merits, Elizabeth first contends that the affidavit of Nurse Stryczek was sufficient to rebut the opinion of the Medical Review Panel and establish the existence of a genuine issue of material fact as to the negligence of the hospital. Methodist responds by arguing that a "nurse is not competent to give medical opinions." Appellee's brief, p. 7.

**2.** According to the Appellee's brief, Nurse Judith Stryczek is the mother of Elizabeth Stryczek.

In her affidavit, Nurse Stryczek stated that she has been a licensed registered nurse for the "State of Indiana and State of Illinois for over 33 years with a Masters in Science and Nursing Degree." Record, p. 70. She also stated that she was a professor of nursing and had been house supervisor at Methodist for approximately seven years. Her training and experience include cardiovascular nursing, critical care, and "the proper protocol for administering cardio-toxic medications." Record, p. 70.

Her affidavit offered conclusions as to the defendants' care of Elizabeth in light of the standards of care for diagnosing patients, the administration of cardio-toxic medications, and the requirements to inform patients of the risks and alternative procedures associated with their treatment. Specifically, Nurse Stryczek concluded that the defendants' deviation from the applicable standards of care resulted in the following: the misdiagnosis of Elizabeth's condition; the failure to perform tests "to determine the condition of her heart after completion of the chemotherapy with radiation and the cardio-toxic agent Adriamycin"; the failure of the physicians to advise Elizabeth of the risks associated with the drugs and radiation administered and the alternative treatments, procedures or protocols which were available; the administration of an improper dosage of Adriamycin and, the failure to "timely communicate the proper diagnosis received from some outside agencies prior to embarking on a course of radiation treatment." Record, p. 72. Nurse Stryczek concluded that these deviations resulted in Elizabeth's cardiac damage.

 We have previously held that "[i]n an action for [medical] malpractice, whether the defendant used suitable professional skill must generally be proven by expert testimony, that is, other physicians, surgeons, or orthodontists, as the case may be." *Stackhouse v. Scanlon,* 576 N.E.2d 635, 639 (Ind. Ct.App.1991), *trans. denied.* Where the offered witness does not have the "same education, training or experience [as that of the defendant], all of which are generally necessary to render an opinion of benefit to a jury," the witness is generally not qualified to serve as an expert. *Id.* (holding that chiropractors are generally not qualified to serve as experts in cases involving physi-

cians). Here, Nurse Stryczek has had neither the same education nor training as physicians. Despite her extensive experience in nursing, we cannot say that she has had the same experience as physicians.

Physicians receive unlimited licenses as to the entire medical field; registered nurses receive licenses which limit the services they may perform. *See* Ind.Code §§ 25–23–1–1.1 and 25–22.5–1–1.1. Specifically, physicians are authorized to engage in the "diagnosis, treatment, correction, or prevention of any disease...." I.C. § 25–22.5–1–1.1. Under this statute, diagnosis is defined as the examination of "a patient, parts of a patient's body, substances taken or removed from a patient's body, or materials produced by a patient's body to determine the source or nature of a disease or other physical or mental condition...." I.C. § 25–22.5–1–1.1(c). Physicians are also authorized to engage in "the suggestion, recommendation or prescription or administration of any form of treatment, without limitation...." I.C. § 25–22.5–1–1.1(a)(1)(B). In contrast, registered nurses are limited to make nursing diagnoses. These diagnoses must be amenable to a nursing regimen, defined as "preventive, restorative, maintenance, and promotion activities which include meeting or assisting with self-care needs, counseling and teaching." I.C. § 25–23–1–1.1(d). In addition, registered nurses are limited to treatments which are amenable to a nursing regimen. Thus, there is a significant difference in the scope of their respective diagnostic and treatment authority.

Therefore, we conclude that Nurse Stryczek is not qualified to offer expert testimony on the standards of care for physicians. *See Stackhouse,* 576 N.E.2d at 639. Thus, she is not qualified to offer expert testimony on the following: the misdiagnosis of Elizabeth's condition; the failure to perform tests "to determine the condition of her heart after completion of the chemotherapy with radiation and the cardio-toxic agent Adriamycin;" and, the alleged failure of the physicians to advise Elizabeth of the risks associated with the drugs and radiation administered and the alternative treatments, procedures or protocols which were available. She is also not qualified to testify as to whether these al-

leged deviations caused Elizabeth's cardiac damage.

■ Of the remaining conclusions contained in Nurse Stryczek's affidavit, she could possibly offer testimony on the administration of cardio-toxic medications, if the testimony was limited to the standard of care for administering the medications by nurses. However, based upon our review of her affidavit and the designated evidence, Nurse Stryczek's testimony would have focused upon whether the physicians failed to prescribe the proper dosage of Adriamycin rather than whether the medications were administered improperly by the nurses involved.[3] Nurse Stryczek is not qualified to provide such expert testimony. Further, she is not qualified to testify as to whether this alleged deviation caused Elizabeth's cardiac damage.

Finally, Nurse Stryczek testified in her affidavit that the hospital failed to "timely communicate the proper diagnosis received from some outside agencies prior to embarking on a course of radiation treatment." In her brief, Elizabeth relies on *Keene v. Methodist Hospital*, 324 F.Supp. 233 (N.D.Ind. 1971), to support her argument that this failure constitutes negligence. The facts in Keene are straightforward. Keene entered the emergency room of Methodist Hospital with a wound to his head. Although four X-rays were taken of Keene, he was released without treatment. Later that same day, a radiologist examined the X-rays and "became aware of the possibility of [a] skull fracture and noted that additional X-rays should be taken." The radiologist recorded his report onto a tape which was not transcribed until two days later. Meanwhile, Keene had been found unconscious in his home and taken to the hospital where he died on the same day

the X-rays were taken. The *Keene* court held that it was "the duty of the Hospital to adopt procedures which would ensure that the opinion of a radiologist showing the possibility of a severe injury would be immediately conveyed to the proper persons." *Keene*, 324 F.Supp. at 235. The court concluded that Methodist was responsible for the negligent failure to provide such a procedure. *Id.*

Elizabeth contends Methodist has once again failed to provide a procedure to ensure proper communication.[4] Specifically, she argues that the hospital failed to ensure the proper communication of outside pathology reports. However, Elizabeth misconstrues *Keene*. In *Keene*, it was the conclusory opinion of the radiologist based upon the X-rays that failed to be communicated to the proper persons. As Elizabeth indicated in her brief, the *Keene* court held that:

"[i]n *Fowler v. Norways Sanitorium* (1942), 112 Ind.App. 347, 42 N.E.2d 415, the Court recognized the distinction between administrative acts and medical acts. Under the test used in that case, the reading of an X-ray would be a medical act requiring the professional opinion of a licensed radiologist. However, the decision on how to communicate that opinion is not a medical act that would cause the person so acting to be guilty of the offense of practicing medicine without a license."

*Id.*

■ In the instant case, the pathologists waited for all of the outside laboratory reports before completing the revised pathology diagnosis. Upon hearing from the fourth outside laboratory on February 24, 1988, the pathologists issued their revised pathology diagnosis.[5] Dr. Barai's office notified Dr.

---

3. It may well be that the physicians themselves administered the chemotherapy and radiation treatments. However, we believe "prescribe" more accurately reflects the focus of Elizabeth's argument.

4. Although Elizabeth does not explicitly present this argument in her complaint, there are enough allegations in the complaint to consider it implicitly presented. In addition, she designated the issue to the trial court in her memorandum in opposition to defendant hospital's second motion for summary judgment. Finally, she has designated evidentiary material to support her argu-

ment, though we conclude the evidence to be inadmissible.

5. There is some conflicting evidentiary material as to when the diagnosis was made and when the last report was received. First, Dr. Kapoor testified in his deposition that the final revised diagnosis was based upon the results from three outside laboratories including: City of Hope, University of Southern California ("USC"), and Cornell University. The record does not contain a report from Cornell but does contain a report from Yale University. Second, the outside laboratory reports are dated January 29, 1988 (City of Hope), February 17, 1988 (Yale University),

Kapoor of the revised diagnosis the next day. The act of reviewing the reports and arriving at the revised diagnosis is a medical act. *See Keene*, 324 F.Supp. at 235 (holding that the reading of an X-ray to arrive at a medical diagnosis is a medical act). The communication of the revised diagnosis is an administrative act. *See id.* Elizabeth argues that the pathologists should have communicated the outside test results to Dr. Barai and Dr. Kapoor as they received each individual report. In *Keene*, this would have been akin to sending the X-rays to the doctors rather than the opinion based on the X-rays. Thus, the issue is whether the revised diagnosis was timely communicated, not whether the reports were timely communicated.

Under this analysis, Elizabeth's argument is better understood as that the final revised diagnosis could have been completed prior to receiving all four reports. However, because the reports were the basis upon which the revised pathology diagnosis was made, and arriving at the revised diagnosis is a medical act, the question of whether the final revised diagnosis could have been completed prior to receiving all four reports is a medical issue which requires an expert opinion. For the same reasons above, Nurse Stryczek is not qualified to provide such expert testimony. Further, she is not qualified to testify as to whether this alleged deviation resulted in Elizabeth's cardiac damage. Consequently,

February 24 (University of Southern California), and March 25, 1988 (Armed Forces Institute). However, the report from the Armed Forces Institute indicates that the letter confirmed a phone conversation that occurred on February 19, 1988. Both parties state that four reports were received prior to communicating the final revised diagnosis to Dr. Kapoor on February 25, 1988. The designated material supports this conclusion when one considers the phone conversation of February 19, 1988. Therefore, this is the conclusion we reach. Regardless, it would not alter the outcome of this appeal.

6. We acknowledge the parties' arguments on what is required in an affidavit opposing the opinion of a medical review panel. We also acknowledge the conflicting opinions on this point of law. *See Oelling v. Rao*, 593 N.E.2d 189, 190 (Ind.1992) (holding that an affidavit must set out "the expert's familiarity with the applicable standard of care," "the applicable standard of care and a statement that the treatment in question fell below that standard."); *Hoskins v. Sharp*, 629 N.E.2d 1271, 1278 (Ind.Ct.

because there is nothing left in the affidavit for which she was qualified to testify, Nurse Stryczek's opinion testimony by way of affidavit is inadmissible. Therefore, we conclude, as apparently did the trial court, that Nurse Stryczek's affidavit presented nothing that could generate a genuine issue of material fact as to Methodist's alleged negligence.[6]

Elizabeth also contends that there are genuine issues of material fact with regard to Methodist's alleged negligent acts which do not require expert testimony. In her brief, Elizabeth alleges "negligent hiring, inadequate staffing, and failure to provide policies for communicating corrective diagnoses from outside agencies to the proper parties." Appellant's brief, pp. 24–25. However, her complaint does not specifically allege these claims. Even assuming that her complaint contains these amorphous claims, she has provided no factual allegations to support them. In *Hansford v. Maplewood Station Bus. Park*, we held that:

"[u]nder Indiana's "notice" pleading system instituted in 1970, a pleading need not adopt a specific legal theory of recovery to be adhered throughout the case; a pleading must, however, plead the operative facts so as to place the defendant on notice as to the evidence to be presented at trial...."

App.1994) (finding an affidavit to be sufficient where it demonstrated "a familiarity with the applicable standard of care, stat[ed] what that standard was and affirmatively stat[ed] that [the conduct in question] would fall below that standard of care"), *reh'g denied*. *But see Jordan v. Deery*, 609 N.E.2d 1104, 1110 (Ind.1993) (holding that an expert's bare assertion that she is familiar with the standard of care is sufficient); *Vogler v. Dominguez*, 624 N.E.2d 56, 60 (Ind.Ct. App.1993) (holding that "the bare assertion of the affiant that he is familiar with the applicable standard of care is adequate to resist summary judgment. The specific knowledge of an expert witness is determinative neither of the witness' qualifications as an expert nor of the admissibility of his opinion into evidence. A witness' competency is determined by his knowledge of the subject matter generally; his knowledge of the specific subject of inquiry goes to the weight to be accorded his opinion"), *reh'g denied, trans. denied*. However, we do not resolve this issue because Nurse Stryczek is not qualified to offer expert testimony in this case and her affidavit is not admissible.

*Hansford v. Maplewood Station Bus. Park,* 621 N.E.2d 347, 356 (Ind.Ct.App.1993), *reh'g denied.* Here, Elizabeth has not pleaded the operative facts as to these two claims. In addition, although she argues that the "defendants were assisted by radiation technicians, nurses and pathologists duly employed by the defendant," this does not demonstrate how Methodist may have hired negligently or staffed inadequately. Record, pp. 153–154. Finally, Elizabeth does not suggest whom Methodist hired negligently nor does she suggest how its staff was inadequate. Therefore, she has waived these allegations.

In sum, the claims which Elizabeth has sufficiently alleged require medical opinion to rebut the opinion of the medical review panel concluding that Methodist did not breach any standard of care. However, aside from Nurse Stryczek's affidavit, which cannot be used, Elizabeth has designated no evidentiary material to rebut the opinion of the medical review panel. Consequently, Elizabeth has not presented any genuine issues of material fact with regard to any allegations of Methodist's negligence. Therefore, the trial court did not err in granting summary judgment to Methodist.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

FRIEDLANDER and MATTINGLY, JJ., concur.