**Harry EAKIN, Commissioner, State of Indiana, Department of Insurance, and Patient's Compensation Fund of the State of Indiana, Defendants–Appellants,**

**v.**

**James KUMIEGA and Vicki Kumiega, Individually and Natural Guardians and Parents of Kara Susan Kumiega, Deceased, and Maryanne Kumiega, b/n/f James and Vicki Kumiega, Plaintiffs–Appellees,**

**and**

**Arthur Branco, M.D., and Rockwood Insurance Co., (Non–Appealing Defendants Below).**

**No. 49A02–8910–CV–530.[1]**

Court of Appeals of Indiana, First District.

Feb. 28, 1991.

---

**1.** This case was reassigned to this office on January 2, 1991.

Linley E. Pearson, Atty. Gen., Kirk A. Knoll, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for defendants-appellants.

Nathaniel Ruff, Lesniak & Ruff, East Chicago, Barry D. Rooth, Theodoros, Theo-doros & Rooth, Merrillville, for plaintiffs-appellees.

**BAKER, Judge.**

We are again faced with an appeal by the Commissioner of Insurance of the State of Indiana (the Commissioner), in which he challenges a trial court ruling that allowed medical malpractice claimants access to excess damages from the Patient's Compensation Fund (the Fund). Similar to our decision today in *Eakin v. Reed*, (1991) Ind.App., 567 N.E.2d 148, we determine that the trial court erroneously allowed the claimants here, James and Vicki Kumiega (the Kumiegas), access to the Fund for excess damages. The dispositive issue in the present appeal is whether the Fund could properly pay damages to the Kumiegas for the emotional distress they experienced when they witnessed the death of their daughter, Kara.[2] Because Indiana's impact rule bars the recovery of such damages, we hold that the trial court erred in allowing the Kumiegas access to the Fund, and thus reverse its judgment.

## FACTS

The facts underlying this appeal are truly tragic. Ten-year-old Kara Kumiega suffered from rheumatoid arthritis. She was under the care of an oral surgeon who recommended that she undergo a mandibular augmentation with a compound rib graft to correct a deformity in her jaw caused by the arthritis. The oral surgeon contacted a general surgeon to perform the rib graft during the surgical procedure. During the surgery, a tracheostomy was performed on Kara to maintain the integrity of the post-operative airway.

Following surgery, Kara was hospitalized. During one of the Kumiegas' and Kara's eight-year-old sister, Maryanne's visits, one of Kara's arteries ruptured. Projectile bleeding occurred from Kara's

2. The Commissioner also challenges the adequacy of a settlement agreement between the Kumiegas and Kara's health care providers. He asks us to determine whether the agreement satisfies the requirements of IND.CODE 16–9.5–4–3. Because we determine the Fund is not liable for noncompensable injuries, the adequacy of the settlement agreement need not be determined.

tracheostomy tube, her nose, and her mouth. When the rupture occurred, Mrs. Kumiega, who was sitting on the bed with Kara, was splattered with her child's blood. Kara died less than an hour later.

The Kumiegas filed a proposed malpractice complaint against the two surgeons. The Kumiegas subsequently entered into a settlement agreement with both surgeons, and petitioned for excess damages from the Fund. The parties stipulated that emotional distress was the basis of the Kumiega's claim for excess damages from the Fund.[3] The trial court held a hearing on the issue of damages and found in favor of the Kumiegas in the amount of $385,000.

## DISCUSSION AND DECISION

Before we address the merits of this appeal, we would like to point out that we are mindful of the Kumiegas' insurmountable loss. While we are cognizant of the overwhelming tragedy the Kumiegas are enduring, we are bound to decide this case within the confines of the law of this State. Our opinion is meant to discuss and analyze the applicable law, and is not in any way meant to minimize the truly devastating loss the Kumiegas have experienced.

■ Indiana follows the general rule that damages for emotional distress are recoverable only when accompanied by and resulting from a physical injury. *Cullison v. Medley* (1990), Ind.App., 559 N.E.2d 619; *Wishard Memorial Hosp. v. Logwood* (1987), Ind.App., 512 N.E.2d 1126, *trans. denied* (and cases cited therein); *Little v. Williamson* (1982), Ind.App., 441 N.E.2d 974, *trans. denied* (and cases cited therein); *Charlie Stuart Oldsmobile, Inc. v. Smith* (1976), 171 Ind.App. 315, 357 N.E.2d 247,

*modified on other grounds* (1977), 175 Ind. App. 1, 369 N.E.2d 947, *trans. denied* (and cases cited therein). The underlying rationale of this rule, known as the impact rule, "is that absent physical injury, mental anguish is speculative, subject to exaggeration, likely to lead to fictitious claims, and often so unforeseeable that there is no rational basis for awarding damages." *Cullison, supra* at 621. An exception to the rule exists for certain tort cases involving the intentional infliction of emotional distress, *Cullison, supra; Little, supra,* but Indiana has not yet recognized an exception to the impact rule for the negligent infliction of emotional distress. *Little, supra; see also Pieters v. B–Right Trucking, Inc.* (N.D.Ind.1987), 669 F.Supp. 1463, 1467. Evidence of our continuing commitment to the impact rule is demonstrated by this court's recent decision upholding the denial of emotional distress damages in *Shuamber v. Henderson* (1990), Ind.App., 563 N.E.2d 1314.

■ In the present case, the Commissioner argues that the impact rule bars the Kumiegas' recovery of emotional distress damages. He points out that while the event witnessed by the Kumiegas was horrifying, they did not suffer any physical injury. The Kumiegas respond that the impact rule was satisfied when Kara's ruptured artery projected blood onto Mrs. Kumiega.[4] Because the impact rule has created a clear line which this court cannot cross, we are constrained to agree with the Commissioner.

The precise issue we must decide is whether the impact rule requires actual physical injury or whether mere physical contact will suffice. As Judge Shields ob-

---

**3.** The Kumiegas assert that the Commissioner has waived the issue of whether the impact rule bars their right to recover for emotional distress. They base their assertion on the fact that the Commissioner stipulated to the Kumiegas' right to recover damages for emotional distress. We read the stipulations differently. The parties stipulated that *if* the Kumiegas were entitled to recover damages for emotional distress, they would be entitled to a certain amount of damages. The stipulation does not in any way state that the Kumiegas *are* entitled to emotional distress damages. The issue is not waived.

**4.** The Kumiegas also argue that the Commissioner's argument must fail because IND.CODE 16–9.5–4–3(5) requires the trial court to consider the health care provider's liability as "admitted and established." While we agree that the statute requires such admitted liability, we do not agree that the existence of a health care provider's liability obligates the Fund to compensate claimants for noncompensable injuries.

served in footnote 3 of *Little, supra*, this court's decision in *Kroger Co. v. Beck* (1978), 176 Ind.App. 202, 375 N.E.2d 640, offers guidance for resolution of the issue. In *Kroger*, the question was whether an injury is required to be permanent or substantial to satisfy the impact rule. In holding in the negative, this court upheld the award of damages for emotional distress. The injury in *Kroger* occurred when the plaintiff's throat was "pricked" after she ate a piece of steak purchased at the defendant's store and containing an animal hypodermic needle. The court held that the "prick" to the plaintiff's throat met the legal requirement of a contemporaneous physical injury, and the lack of permanency of the injury was not fatal to her claim. We interpret this to mean that although a substantial injury is not required, an injury of some sort is required just the same.

Our conclusion that actual physical injury must occur, rather than mere physical contact, is supported by the rationale of the rule. The injury must be something tangible because it "provides the added assurance that mental disturbance actually occurred[.] ..." *Charlie Stuart Oldsmobile*, 171 Ind.App. at 326, 357 N.E.2d at 253. The Kumiegas assert, quite understandably, that this policy does not apply to them because it is undeniable that they experienced emotional distress. While the Kumiegas' point is well taken, we are not in a position to exempt them from the harshness of the rule.[5] "[T]his responsibility we must leave to our supreme court or legislature." *Little*, 441 N.E.2d at 975.

### CONCLUSION

We conclude that the impact rule bars the Kumiegas' claim for emotional distress

damages. From this it follows that such noncompensable injuries are not subject to payment from the Fund. Accordingly, the trial court is reversed and this cause remanded with instructions to enter judgment in favor of the Commissioner and the Fund.

BUCHANAN, J., concurs.

CONOVER, J. concurs in result.

---

5. It should be noted that if an exception were made in this case, it would create the potential for an anamolous result in subsequent cases. We can imagine a scenario where a child's parents witness a tragic accident involving their child. When emergency medical personnel arrive on the scene they instruct the parents to stand clear of the child. Those parents who ignore the instructions and consequently come into contact with the child's blood would be compensated for the injury to the child. On the other hand, those parents who heed the instructions and do not come into contact with their child's blood would be denied any recovery under the impact rule. It is this kind of conflict that supports adherence to the present interpretation of the impact rule.

1. This case was reassigned to this office on January 2, 1991.