**J.L. and R.L., Appellants–Plaintiffs,**

**v.**

**John F. MORTELL, In His Capacity as Commissioner of Insurance, Appellee–Defendant.**

**No. 49A05–9305–CV–189.**

Court of Appeals of Indiana, Fifth District.

April 27, 1994.

Alfred H. Plummer, III, Wabash, for appellants.

Adam O. Crowe, Indianapolis, for appellee.

BARTEAU, Judge.

This is an appeal from the dismissal of a petition for excess damages from the Patient's Compensation Fund. We reverse and remand.

### FACTS

In 1986, upon her doctor's referral, J.L. began receiving physical therapy for muscle spasms in her abductor muscle.[1] The physical therapist eventually added a vaginal massage to the treatment program. In 1990, J.L. began seeing another therapist who informed J.L. that vaginal massages were inappropriate and that the technique was unfounded. J.L. suffered severe physical and emotional distress after discovering the inappropriateness of the technique. She was diagnosed as suffering from post-traumatic distress syndrome. She received a settlement from the therapist and his insurer in the amount of $100,000. She and her husband, R.L. (hereinafter referred to jointly as J.L.), then filed for excess damages from the Patient's Compensation Fund.

Commissioner filed neither an agreement nor an objection to the demand for payment within the time allotted by Indiana Code 16–9.5–4–3(3), and the trial court entered an order noting the same and setting the matter for hearing to determine the amount, if any, to be paid out of the fund. Although not noted by the trial court, on the day prior to the issuance of the order, Commissioner filed an objection to setting the petition for approval, with an explanation of his delay in filing a response, and an answer and objection. J.L. never objected to the belated filing nor asked that the belated answer be stricken.

At the hearing, following the close of J.L.'s case, Commissioner filed a Motion to Dismiss under Ind.Trial Rule 41(B). The court took the motion under advisement and Commissioner rested without presenting evidence.

---

1. The abductor muscles are the inside thigh muscles and attach to the pelvic bone.

Thereafter, the court granted Commissioner's Motion to Dismiss and entered the following conclusions of law:

1. Indiana follows the general rule that damages for emotional distress are recoverable only when accompanied by and resulting from a physical injury.

2. Although a substantial injury is not required, a physical injury rather than mere physical contact is required.

3. Therefore, the emotional distress experienced by the Plaintiff [J.L.], as a result of the treatment which she received from the Defendant, Jay S. Frye, is a noncompensable injury.

In denying J.L.'s motion to correct errors, the court made the following entry:

Come now the Plaintiffs, [J.L.] and [R.L.], by counsel, having filed their Motion to Correct Errors, and the Court being duly advised in the premises, now finds that the motion should be denied pursuant to *Eakin v. Kumiega* (1991, Ind.App., 567 N.E.2d 150), *trans. denied.*

### APPLICABLE STATUTE

The issues presented focus on the meaning and scope of the former Ind.Code 16–9.5–4–3 (recodified as I.C. 27–12–15–3), which governs the procedure for pursuing claims of excess damages from the Patient's Compensation Fund. The former I.C. 16–9.5–4–3 reads:

If a health care provider or its insurer has agreed to settle its liability on a claim by payment of its policy limits of one hundred thousand dollars ($100,000), and claimant is demanding an amount in excess thereof, then the following procedure must be followed:

(1) A petition shall be filed by the claimant in the court named in the proposed complaint, or in the circuit or superior court of Marion County, at the claimant's election, seeking (a) approval of an agreed settlement, if any, or (b) demanding payment of damages from the patient's compensation fund.

(2) A copy of the petition with summons shall be served on the commissioner, the health care provider and his insurer, and shall contain sufficient information to inform the other parties about the nature of the claim and the additional amount demanded.

(3) The commissioner and either the health care provider or the insurer of the health care provider may agree to a settlement with the claimant from the patient's compensation fund, or the commissioner, the health care provider or the insurer of the health care provider may file written objections to the payment of the amount demanded. The agreement or objections to the payment demanded shall be filed within twenty (20) days after service of summons with copy of the petition attached thereto.

(4) The judge of the court in which the petition is filed shall set the petition for approval or, if objections have been filed, for hearing, as soon as practicable. The court shall give notice of the hearing to the claimant, the health care provider, the insurer of the health care provider, and the commissioner.

(5) At the hearing the commissioner, the claimant, the health care provider, and the insurer of the health care provider may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. If the commissioner, the health care provider, the insurer of the health care provider, and the claimant cannot agree on the amount, if any to be paid out of the patient's compensation fund, then the court, after hearing any relevant evidence on the issue of claimant's damage, submitted by any of the parties described in this section, shall determine the amount of claimant's damages, if any, in excess of the one hundred thousand dollars ($100,000) already paid by the insurer of the health care provider. The court shall determine the amount for which the fund is liable and render a finding and judgment accordingly. *In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care*

*provider as admitted and established.* (emphasis added)

(6) Any settlement approved by the court shall not be appealed. Any judgment of the court fixing damages recoverable in any such contested proceeding shall be appealable pursuant to the rules governing appeals in any other civil case tried by the court.

(7) A release executed between the parties shall not bar access to the patient's compensation fund unless the release specifically provides otherwise.

## TIMING OF ANSWER

J.L.'s initial contention relates to the late filing of the Answer and Objection. J.L. contends that Commissioner's failure to timely file his Objection waived his right to contest the award of damages. Even though the issue is raised, J.L. neglects to provide any citation to authority in support of her claim nor any cogent argument on the issue. Therefore, consideration of this issue has been waived. Ind. Appellate Rule 8.3(A)(7).

## TRIAL COURT EXCEEDED AUTHORITY

J.L.'s second contention is that the trial court exceeded its authority by engaging in an inquiry and determination as to whether her injuries were noncompensable under the Medical Malpractice Act. *Dillon v. Glover* (1992), Ind.App., 597 N.E.2d 971, is offered in support of her argument. Commissioner contends *Glover* is inapplicable.

In *Glover*, a wrongful death action, the Commissioner appealed the trial court's award of damages to Glover, individually and as the personal representative of the Estate of Milton Glover, contending that the negligence of the health care provider was not the proximate cause of Milton Glover's death. This court, in affirming the trial court, held that the question of causation was not at issue and permitted the award of damages. In so doing, this court rejected the Commissioner's contention that the statute allows litigation of a health care provider's liability after the liability issue has been settled:

In our view the Statute contemplates that, upon a petition for excess damages, the trial court will determine the *amount* of damages, if any, due to the claimant, not *whether* the provider is liable for damages.

*Id.* at 973.

Commissioner discounts the precedential effect of *Glover* by stating that the "Supreme Court, in denying transfer in *Glover*, specifically stated that the holding applied only to cases of wrongful death" and that the "Supreme Court has explicitly left open the question of the fund's ability to review the compensability of damages in non-death case." Appellee's brief at 5. Our Supreme Court did not issue an opinion when it denied transfer in *Glover*. Accordingly, it did not hold that the rationale in *Glover* was limited to wrongful death cases. Nor can such an assumption be made. To the contrary, pursuant to Ind.Appellate Rule 11(B)(4), "[t]he denial of a petition to transfer shall have no legal effect other than to terminate the litigation between the parties in the Supreme Court."

Thus, *Glover*, even though a wrongful death case, is applicable here. Commissioner is not permitted to challenge either the liability or proximate cause issues. They are deemed established, pursuant to statute, by the settlement with the health care provider.

However, while *Glover* is applicable, it is not dispositive of the question of whether the trial court exceeded its authority in the instant case. In *Glover*, damages were awarded for the loss of Milton's love, care and affection. Recovery for loss of love, care and affection is a recognized and appropriate measure of damages in wrongful death cases. *Id.* at 974. In this case, it is obvious from the court's *sua sponte* conclusions of law that J.L.'s claim was dismissed not because the court reexamined the liability issue but because the court concluded that J.L.'s damages, being emotional in nature, were noncompensable under the statutory scheme and existing case law. Thus, the trial court determined that an award of excess damages from the fund was prohibited because of the nature of damages sustained by J.L. Such an inquiry by the trial court is appropriate. *See Dillon v. Callaway* (1993), Ind.App., 609

N.E.2d 424 (compensable nature of injuries not decided by settlement of liability with health care provider); *Eakin v. Kumeiga* (1991), Ind.App., 567 N.E.2d 150 (admission of liability did not obligate the Fund to compensate claimants for noncompensable injuries). Accordingly, the court did not exceed its authority when it inquired into the compensable nature of J.L.'s injuries. Having determined that the court's inquiry was proper, we now examine whether the results of the inquiry were correct.

## DAMAGES FOR EMOTIONAL DISTRESS

■ The trial court cited *Kumeiga,* 567 N.E.2d 150, in denying J.L.'s motion to correct errors. In *Kumeiga,* this court held that the impact rule, which barred the award of damages for emotional distress unless accompanied by and resulting from a physical injury, prohibited a successful claim for emotional distress damages. However, since our decision in *Kumeiga,* our supreme court has modified the impact rule. *Shuamber v. Henderson* (1991), Ind., 579 N.E.2d 452.[2] The modified version provides that "[when a plaintiff] sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, ... such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff." *Id.* at 456.

In *Shuamber,* a negligence/underinsurance cause of action, Gail Shuamber was driving an automobile at the time John Henderson collided with it. Gail's daughter Katherine and son Zachary were passengers in the car. Both Gail and Katherine suffered various physical injuries in the crash and Zachary was killed. Gail and Katherine sought damages for the emotional distress they suffered from watching Zachary die. The supreme court, applying the modified impact rule, held that they were entitled to present their case for emotional damages to the jury, even though the emotional distress arose from watching Zachary die rather than from a physical injury. *Id.* at 456.

We see no distinction between the situation in *Shuamber* and that in the case before us. J.L. sustained a direct impact when the therapist performed the vaginal massage on her. That the massage was the result of negligence is established by the settlement. J.L. claims that her direct involvement in the vaginal massages caused her to sustain an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person. She is therefore entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arose out of or accompanied any physical injury. The trial court's reliance on the old impact rule and *Kumiega* was misplaced and consequently we reverse and remand to provide J.L. the opportunity to prove her emotional distress damages.

Reversed and remanded.

RUCKER and KIRSCH, JJ., concur.

---

2. *Shuamber* was decided prior to the trial court's decision in the instant case.