Nancy **ETIENNE** and Robert Etienne,
Appellants–Plaintiffs,

v.

Saverio **CAPUTI, Jr., M.D.,**
Appellee–Defendant.

No. 49A04–9608–CV–338.

Court of Appeals of Indiana.

May 6, 1997.

Caroline Gilchrist, Cohen & Malad, P.C., Indianapolis, for Appellants–Plaintiffs.

L. Alan Whaley, Ice Miller Donadio & Ryan, Indianapolis, for Appellee–Defendant.

## OPINION

CHEZEM, Judge.

### Case Summary

Appellants–Plaintiffs, Nancy ("Nancy") and Robert Etienne (collectively, "Etienne"), appeal the trial court's order granting summary judgment in favor of Appellee–Defendant, Saverio Caputi, Jr., M.D. ("Dr. Caputi"). We affirm.

### Issues

Etienne presents two issues which we rephrase as follows:

I. Whether Etienne's evidence regarding causation was sufficient to create a genuine issue of material fact precluding summary judgment of the medical malpractice case; and,

II. Whether Etienne's negligent infliction of emotional distress claim was appropriately disposed of through summary judgment.

### Facts and Procedural History

On July 30, 1987, fifty-one year old Nancy underwent a bilateral mammogram which had been ordered by her primary physician, Dr. Lewis Smith. Dr. Young Suh authored a mammogram report in which he related that Nancy had fibrocystic and benign calcifications. The report made no recommendations for another mammogram within a designated period of time, for magnification, or for any other follow-up. Dr. Smith advised Nancy that her mammogram was normal, and did not recommend annual mammograms for her.

On August 16, 1989, Nancy visited Dr. Smith and complained of some lumps in the upper portion of her left breast. After examining her breasts, Dr. Smith ordered a bilateral mammogram, which took place one week later. This time, Dr. Caputi interpreted the mammogram and reported, "isolated fibrocystic changes bilaterally with a few tiny benign calcifications noted in the left breast. No change since 7–30–87. Grade II." No

follow-up, magnification, or biopsy was recommended. Again, Dr. Smith advised Nancy that her mammogram was normal.

Because her husband's insurance changed, Nancy's last appointment with Dr. Smith was September 19, 1989. Thereafter, she began to see Dr. Larry Lovall and Dr. Garnet Harris. She complained to them of continuing problems with her left breast. A November 24, 1989 mammogram was ordered, and revealed findings indicating cancer. That same day, Nancy was referred to a surgeon, Dr. Thomas Hibbeln. After Dr. Hibbeln diagnosed inflammatory ductal carcinoma, Nancy began chemotherapy, and had a modified left radical mastectomy. She was told that she could have as little as six months to live.

In a complaint against various defendants,[1] Etienne alleged a failure to properly read the mammogram results and failure to recommend appropriate follow-up care. The Medical Review panel unanimously opined that (1) the evidence supports the conclusion that Dr. Caputi failed to comply with the appropriate standard of care as charged; and (2) Dr. Caputi's conduct was not a factor of the resultant damages. Thereafter, Etienne filed a malpractice action in court against Dr. Caputi. Dr. Caputi filed a motion for summary judgment, asserting that even if he was negligent, his negligence did not cause Etienne's injuries. In support, he relied on the panel opinion as well as the opinion of one of Etienne's experts. Following briefing and a hearing, the trial court found that Dr. Caputi's conduct "was not a causative factor in the Plaintiffs' damages." Thus, Dr. Caputi's motion for summary judgment was granted.

### Discussion and Decision

■ When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court. We may only consider those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters specifically designated to the trial court by the moving party for the pur-

---

1. Etienne's claims against Dr. Lewis, Dr. Suh, and MetroHealth, Inc. are still pending at the trial court level.

poses of the motion for summary judgment. *Tom v. Voida*, 654 N.E.2d 776, 781 (Ind.Ct. App.1995), *trans. denied.* The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993); Ind.Trial Rule 56(C), (H). A trial court's grant of summary judgment is clothed with a presumption of validity. *Rosi*, 615 N.E.2d at 434.

## I. Causation in Negligence Claim

■ Etienne first challenges the trial court's finding that Dr. Caputi's conduct was not a causative factor of Etienne's injuries. In a medical malpractice action based upon negligence, a plaintiff must establish: the defendant's duty in relation to the plaintiff; the defendant's failure to conform its conduct to the requisite standard of care required by the relationship forming the duty; and, an injury to the plaintiff resulting from that failure. *Oelling v. Rao*, 593 N.E.2d 189, 190 (Ind.1992). The standard of care is that degree of care, skill and proficiency exercised by reasonably careful, skillful, and prudent practitioners in the same class acting under the same or similar circumstances. *Vergara v. Doan*, 593 N.E.2d 185, 187 (Ind.1992). To establish a prima facie case of medical malpractice, a plaintiff must provide expert testimony showing that the physician's performance fell below the applicable standard of care, and that his negligence was a proximate cause of the plaintiff's injuries. *Bethke v. Gammon*, 590 N.E.2d 573, 574–75 (Ind.Ct. App.1991). Absent such expert evidence, there is no genuine issue of material fact for a jury and summary judgment is appropriate. *Stackhouse v. Scanlon*, 576 N.E.2d 635, 639 (Ind.Ct.App.1991), *trans. denied.*

■ Under Indiana summary judgment procedure, a non-movant is not required to come forward with contrary evidence until the party seeking summary judgment demonstrates the absence of a genuine issue of material fact. *Kennedy v. Murphy*, 659 N.E.2d 506, 508 (Ind.1995). In support of his summary judgment motion, Dr. Caputi in-cluded the unanimous opinion of the Medical Malpractice panel, which found:

> The evidence supports the conclusion that the defendant, Saverio Caputi, Jr., M.D., failed to comply with the applicable standard of care as charged in the Proposed Complaint. *The panel is of the further unanimous opinion that the conduct complained of was not a factor of the resultant damages.*

(R. 41–42) (emphasis added). In addition, Dr. Caputi included a letter written by Etienne's expert, Dr. George Sledge. Dr. Sledge wrote:

> As regards the third question, what impact would an improper failure to diagnose Mrs. Etienne's cancer in August of 1989 have had in relation to her actual diagnosis three months later. Here, I think, the answer provided by the medical literature is straightforward: there would be *virtually no impact* in terms of ultimate outcome. It is unlikely that the patient went from being node-negative to being node-positive during this period. The lead time here is small and its impact therefore *likely to be close to nil.*
>
> In conclusion, an improper failure to diagnose the patient's breast cancer in July of 1987 could have had a clinically important negative effect, impairing both the patient's ultimate prognosis and her likelihood of breast-preserving surgery. For subsequent dates, the effect would be *less profound or nil.* I would add further that [t]he above statements are contingent upon the assumption that an improper failure to diagnose occurred in July of 1987 due to the mis-reading of the patient's screening mammogram. I have not personal[ly] read the patient's mammogram and therefore can render no opinion regarding whether an improper failure to diagnose did indeed occur.

(R. 44) (emphases added). Thus, although Dr. Caputi did not dispute his breach of the appropriate standard of care, he did submit the aforementioned materials regarding the lack of causation. These materials were sufficient to require Etienne to come forward with contrary evidence on the causation issue.

Etienne filed a brief in opposition to Dr. Caputi's motion for summary judgment. Etienne relied upon a vacated case[2] and submitted no additional materials to support the assertion that Dr. Caputi's actions caused Etienne's damages. Instead, Etienne merely asserted that Dr. Sledge's letter was sufficient. That is, Etienne argued that Dr. Sledge's letter did not state that there was absolutely no causation, only that the chance of causation was slim. In view of the actual language in the designated materials above, Etienne has not met its burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that Dr. Caputi was entitled to judgment as a matter of law on the negligence claim.

## II. Negligent Infliction of Emotional Distress

█ Etienne next contends that the trial court should not have granted summary judgment on the issue of negligent infliction of emotional distress. Specifically, Etienne argues that Indiana's modified impact rule allows the pursuit of a negligent infliction of emotional distress claim. Analysis of such a claim inevitably leads back to *Shuamber v. Henderson*, 579 N.E.2d 452 (Ind.1991). Thus, we outline *Shuamber* and apply it to the present case.

█ Our supreme court began *Shuamber* with a recitation of the traditional impact rule and its genesis:

Unquestionably, Indiana has a long-standing and well-established rule that damages for mental distress or emotional trauma may be recovered only when the distress is accompanied by *and* results from a physical injury caused by an impact to the person seeking recovery. The mental injury must be the natural and direct result of the plaintiff's physical injury. This rule is known as the "impact rule" because of the requirement that there be some physical impact on the plaintiff before recovery for mental trauma will be allowed. This has been the rule in Indiana for nearly one hundred years, and has its origins in England. The rule, as applied in Indiana, has three elements: (1) an impact

on the plaintiff; (2) which causes physical injury to the plaintiff; (3) which physical injury, in turn, causes the emotional distress.

*Id.* at 454 (citations omitted) (emphasis in original). The opinion next discussed the exceptions to the traditional impact rule. For instance, a defendant's conduct which is "inspired by fraud, malice or like motives involving intentional conduct" has been recognized as an exception to operation of the impact rule. Also, recovery for emotional distress may be had in the absence of a physical injury in the case of an intentional tort which would foreseeably provoke an emotional disturbance of the kind normally to be aroused in the mind of a reasonable person.

Under the traditional impact rule as well as the exceptions thereto, no recovery for emotional damages was available to the plaintiff in *Shuamber*. Realizing that the mother and daughter who watched their son/brother die in a car accident would have no chance to recover emotional damages resulting from seeing such trauma, our supreme court then announced a modification to the traditional impact rule in negligence cases:

When, as here, a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, we hold that such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

*Shuamber*, 579 N.E.2d at 456. Since *Shuamber*, courts have had various occasions to apply and interpret the modified impact rule as well as the exceptions to the traditional impact rule, *see, e.g., Adams v. Clean Air Systems, Inc.*, 586 N.E.2d 940 (Ind.Ct.App. 1992); *Roe v. North Adams Community School Corp.*, 647 N.E.2d 655 (Ind.Ct.App. 1995), *trans. denied*, though not always with

---

**2.** *Griffith v. Jones*, 577 N.E.2d 258 (Ind.Ct.App. 1991), *vacated*, 602 N.E.2d 107 (Ind.1992).

consensus. *See Bader v. Johnson*, 675 N.E.2d 1119, (Ind.Ct.App.1997) (resulting in a lead opinion, a second opinion concurring in part with the lead and concurring in part in result with a separate opinion, and a third opinion concurring in part and dissenting in part), *trans. pending*.

In the present case, the distress claimed by Etienne is not the result of the physical injury to Nancy. That is, Etienne is not claiming that the emotional damages stem from the chemotherapy and/or the modified left radical mastectomy. Neither Nancy nor her husband are alleging mental injuries as a result of the actual physical injury to Nancy. Rather, the emotional damages are different and particular. Nancy claims that she suffers "emotional turmoil and mental distress" in having to deal "daily with the fear of misdiagnosis, the fear of the return of my cancer, anger and anxiety." (R. 257). She apparently gets no relief from test results which indicate no recurrence of the cancer. Indisputably, Etienne's claim would fail under the traditional impact rule.

Moreover, Etienne does not allege that Dr. Caputi's conduct was inspired by fraud, malice, or like motives involving intentional conduct. *Cf. Naughgle v. Feeney–Hornak Shadeland Mortuary, Inc.*, 498 N.E.2d 1298, 1301 (Ind.Ct.App.1986), *trans. denied*. Likewise, this is not a case of an intentional tort which would foreseeably provoke an emotional disturbance of the kind normally to be aroused in the mind of a reasonable person. *Cf. Cullison v. Medley*, 570 N.E.2d 27 (Ind. 1991). To the contrary, Etienne specifically claims *negligent*—rather than intentional—infliction of emotional distress. Thus, none of the exceptions to the traditional impact rule apply and we are presented with yet another permutation involving the modified impact rule.

Unlike the plaintiffs in *Shuamber* and *Pieters v. B–Right*, 669 F.Supp. 1463 (N.D.Ind.1987), Etienne does not claim emotional damages as a result of seeing a loved one's traumatic death. Furthermore, Etienne's case is different from *J.L. v. Mortell*,

633 N.E.2d 300 (Ind.Ct.App.1994), *trans. denied*, in which the female plaintiff-patient suffered emotional damages as a result of the defendant-physical therapist's performance of inappropriate[3] vaginal massages while treating her for abductor muscle spasms. In Etienne's case, no physical touching occurred. Instead, the alleged emotional damages arose as a result of Dr. Caputi's incorrect reading of Nancy's mammogram. As we have stated, the "modified impact rule maintains the requirement that [the plaintiff] demonstrate that she suffered a direct physical impact." *Gorman v. I & M Electric Co., Inc.*, 641 N.E.2d 1288, 1290 (Ind.Ct.App. 1994), *trans. denied*. We do not see the direct physical impact or direct involvement necessary for the application of the modified impact rule. We can deny summary judgment on this issue only by ignoring the direct physical impact requirement of the modified impact rule. As our supreme court established this rule, we are not free to ignore it. *See Miller v. May*, 656 N.E.2d 1198, 1200 (Ind.Ct.App.1995), *trans. denied.*; *Clean Air Systems*, 586 N.E.2d at 942. Accordingly, Etienne has not met its burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that Dr. Caputi was entitled to judgment as a matter of law on the negligent infliction of emotional distress claim.

Affirmed.

RILEY and DARDEN, JJ., concur.

---

**3.** This would seem to denote intentional rather than simply negligent conduct—another distinction from the present case. However, the settlement in that case apparently stated otherwise. *Mortell*, 633 N.E.2d at 304.