**CLARIAN HEALTH PARTNERS, INC. f/k/a Methodist Hospital, Appellant–Defendant,**

v.

**Natalie WAGLER, Appellee–Plaintiff.**

No. 49A02–0907–CV–598.

Court of Appeals of Indiana.

March 31, 2010.

Matthew W. Conner, Tabbert Hahn Earnest & Weddle, LLP, Indianapolis, IN, Attorney for Appellant.

Lisa M. Dillman, Dillman & Assoc., LLC, Martinsville, IN, Attorney for Appellee.

Peter H. Pogue, Katherine G. Karres, Schultz & Pogue, LLP, Indianapolis, IN, James D. Johnson, Rudolph Fine Porter & Johnson, Evansville, IN, Attorneys for amicus curiae Defense Trial Counsel of Indiana.

## OPINION

BROWN, Judge.

Clarian Health Partners, Inc. f/k/a Methodist Hospital ("Clarian") appeals the trial court's denial of its motion for summary judgment. Clarian raises two issues, which we consolidate and restate as whether the trial court erred by denying Clarian's motion for summary judgment. We reverse.

The relevant facts follow.[1] On February 26, 2003, Natalie Wagler was admitted to Clarian to undergo open heart surgery to repair a valve in her heart. Dr. Thomas Wozniak informed Wagler's parents that a complication arose during the surgery and that Wagler's femoral artery was compromised. On February 27, 2003, Wagler was rushed into an emergency surgery where a fasciotomy was performed.

On March 3, 2004, Wagler filed a proposed complaint against Dr. Wozniak and Clarian[2] and pursued her claims against them with the Indiana Department of Insurance. On May 9, 2007, a medical review panel found:

> A majority of the panel is of the opinion that the evidence supports the conclusion that [Clarian] failed to comply with the appropriate standard of care, but that it cannot be determined from the evidence whether its conduct was a factor of any resulting damage. Dr. Cefali[3] is of the opinion that the evidence does not support the conclusion that [Clarian] failed to meet the applicable standard of care, and that its conduct was not a factor of the resultant damages.

Appellant's Appendix at 44.

On June 5, 2007, Wagler filed a motion for leave to file her first amended complaint, which the trial court granted the next day. In Wagler's first amended complaint, she alleged that she complained of severe leg pain and neither Dr. Wozniak nor the Clarian staff appropriately monitored her after her complaints of leg pain.

Wagler alleged that she had five additional surgeries to her leg and now suffers from a "permanent leg deformity" and "permanent left foot drop," and may have to undergo additional surgeries in the future. *Id.* at 30.

On June 19, 2007, Clarian filed a motion for summary judgment and designated the opinion of the medical review panel. Clarian argued that Wagler failed to provide any supportive evidence or expert opinion to support the claim of medical malpractice. In response, Wagler designated the opinion of the medical review panel and the affidavit of Tina Little, a licensed nurse in Illinois and Missouri. Little's affidavit indicated that Clarian's nursing staff breached the standard of care and that this breach was a substantial factor in causing injury and damage to Wagler.

On June 17, 2008, Clarian filed a Motion to Strike Plaintiff's Nurse's Testimony Regarding Causation. Clarian also filed a Designation of Additional Evidence and designated portions of Dr. Wozniak's deposition. After a hearing, the trial court denied Clarian's motion for summary judgment. The trial court's order stated in part:

> If medical expert opinion is *not in conflict* regarding whether the physician's conduct met the requisite standard of care, there are no genuine triable issues. *Marquis v. Battersby* [443 N.E.2d 1202, 1203 (Ind.Ct.App.1982)]; *Simms v. Schweikher* [651 N.E.2d 348, 350 (Ind.Ct.App.1995), *trans. denied*].

---

1. Some of the facts are taken from the complaint which was designated by Clarian and are not contested. *See Lean v. Reed,* 876 N.E.2d 1104, 1106 n. 1 (Ind.2007) (addressing the grant of summary judgment and noting that certain facts were taken from the complaint which was designated by the movant pursuant to Trial Rule 56(C) and not contested).

2. Wagler identified the defendants as "DR. JOHN DOE" and "JOHN DOE HOSPITAL" in this complaint. Appellant's Appendix at 27.

3. The medical review panel consisted of Dr. Vicent Scavo, Jr., Dr. Douglas Gray, and Dr. Dominic Cefali.

Moreover, where there is a *unanimous* medical review panel determination favoring the defendant and no countervailing expert opinion, the defendant is entitled to judgment as a matter of law. *McGee v. Bonaventura* [605 N.E.2d 792, 794 (Ind.Ct.App.1993)]. Likewise, a *unanimous* panel finding the doctor's conduct did not cause the harm may provide summary judgment for the doctor if a counter opinion is not submitted. *Etienne v. Caputi* [679 N.E.2d 922, 923 (Ind.Ct.App.1997)]; *Marquis v. Battersby, supra.* (as indicated in *Randolph County Hosp. v. Livingston* [650 N.E.2d 1215, 1218 n. 2 (Ind.Ct.App.1995)), *reh'g denied, trans. denied*].

Other Indiana cases also suggest that summary judgment on medical causation is only allowed upon *unanimous* medical review panel opinions. *Hoskins v. Sharp* [, 629 N.E.2d 1271 (Ind.Ct.App. 1994)] (unanimous opinion for plaintiff on standard of care with crossed out other available opinions, including causation, is insufficient for summary judgment on causation); *Bunch v. Tiwari* [, 711 N.E.2d 844, 847 (Ind.Ct.App.1999)] (unanimous opinion for doctor on causation, but finding issue of fact on standard of care, is sufficient for summary judgment on causation).

\*    \*    \*    \*    \*    \*

Under Indiana law, Clarian has the affirmative burden to put forth a medical review panel opinion that finds for [Clarian] on causation. The Opinion here does not meet that burden.[4] First of all, the Opinion itself is not unanimous, and therefore is counter to the cases demonstrating a lack of dispute about the triable issue of causation. *Etienne v. Caputi, supra.*; *Marquis v. Battersby, supra.*; *Simms v. Schweikher, supra.*; *McGee v. Bonaventura, supra.* Secondly, Clarian seems to rely on a single panel member opinion by itself, instead of submitting a separate affidavit, like *Morton v. Moss,* [694 N.E.2d 1148 (Ind.Ct.App.1998)]. Summary judgment is available only if Clarian can clearly show unequivocal expert medical testimony about causation. The record shows inconclusive expert testimony about causation in the Opinion, which is accordingly insufficient for summary judgment. The Opinion should be construed like *Sawlani v. Mills,* [830 N.E.2d 932 (Ind.Ct.App.2005), *trans. denied*], that is, finding a breach of the standard of care, but no determination whether Natalie was damaged as a result. Accordingly, Clarian fails to meet its burden, and summary judgment is precluded.

Further consideration of the nurse affidavit is moot, but the Court also finds Indiana law to be contradictory and inconclusive regarding expert testimony from nurses. Therefore, the policy and purpose of summary judgment also precludes summary judgment on this ground.

*Id.* at 19–21.

Upon Clarian's request, the trial court certified the order for interlocutory appeal. Thereafter, we accepted jurisdiction of the interlocutory appeal pursuant to Ind. Appellate Rule 14(B).

---

**4.** To the extent that Dr. Cefali's opinion can be culled out as some sort of independent affidavit, the Court must then find the other panel opinions cannot be disregarded either, and there are disputes about the efficacy of the evidence. Overall, with respect to this matter as a general negligence case, the Court relies on *Hottinger v. Trugreen,* 665 N.E.2d 593 (Ind.Ct.App.1996), *trans. denied, overruled by Dow Chemical Co. v. Ebling ex rel. Ebling,* 753 N.E.2d 633 (Ind.2001).

The issue is whether the trial court erred by denying Clarian's motion for summary judgment. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974. A party moving for summary judgment bears the initial burden of showing no genuine issue of material fact and the appropriateness of judgment as a matter of law. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 975 (Ind.2005). If the movant fails to make this prima facie showing, then summary judgment is precluded regardless of whether the non-movant designates facts and evidence in response to the movant's motion. *Id.*

■ The elements of a claim for medical malpractice are the same as for any other claim for negligence. *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 910 (Ind.2009). The claimant must show that the defendant owed her a duty of care at the time the injury occurred, that the defendant's behavior did not conform to that standard of care, and that the claimant's injuries were proximately caused by the breach. *Id.* In a medical negligence claim, the plaintiff must prove by expert testimony not only that the defendant was negligent, but also that the defendant's negligence proximately caused the plaintiff's injury. *Schaffer v. Roberts*, 650 N.E.2d 341, 342 (Ind.Ct.App. 1995). While the existence of a duty is regarded as a matter of law, summary judgment based on application of law to particular facts is rarely suitable. *McSwane*, 916 N.E.2d at 910.

Clarian argues: (A) the opinion of the medical review panel negates the element of causation; and (B) Wagler failed to designate any expert testimony on causation.[5] We first address Clarian's arguments regarding whether the medical review panel's opinion created an issue of fact.

## A. *Medical Review Panel*

■ Clarian relies upon *Malooley v. McIntyre*, 597 N.E.2d 314 (Ind.Ct.App. 1992), in which the administrator of the Estate of Suzanne McIntyre filed a complaint alleging medical malpractice against Dr. John Malooley and Dr. Eric Cure. 597 N.E.2d at 315. Two of the doctors on the medical review panel concluded that "[t]he evidence supports the conclusion that defendant, Dr. Cure, failed to meet the appropriate standard of care as charged in the complaint," and that "[a]s to defendant, Dr. Malooley, there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury." *Id.* The two doctors also concluded that "[a]s to defendants, Dr. Cure and Dr. Malooley, the conduct complained of was not a factor of the resultant damages." *Id.*

Dr. Shapiro, the third doctor on the medical review panel, concluded that "[t]he evidence supports the conclusion that defendant, Dr. Cure, failed to meet the ap-

---

5. Clarian does not argue on appeal that Dr. Wozniak's deposition negates the element of causation.

propriate standard of care as charged in the complaint," and that "[a]s to defendant, Dr. Malooley, there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury." *Id.* at 316. Dr. Shapiro also concluded that "[a]s to defendants, Dr. Cure and Dr. Malooley, it is not possible to determine from the evidence submitted, whether or not the conduct complained of with respect to Dr. Cure and Dr. Malooley was or was not a factor of the resultant damages." *Id.* After the panel issued its opinion, the Estate filed suit, incorporating virtually the same allegations as were presented to the panel. *Id.*

Dr. Malooley and Dr. Cure each moved for summary judgment and argued that: (1) no member of the panel had found a causal link between McIntyre's death and the actions of Dr. Malooley and Dr. Cure; and (2) in its civil suit the Estate presented no expert opinion, indeed presented no evidence of any kind which would indicate such a causal link. *Id.* Dr. Malooley and Dr. Cure supported their motions for summary judgment with the panel's opinion. *Id.* The trial court denied the motions for summary judgment. *Id.* at 315.

On appeal, this court noted that the panel's opinion was made admissible by Ind.Code § 16–9.5–9–9.[6] *Id.* at 316. The court held that "the trial court was bound to accept the conclusory Opinion as competent evidence that the actions of Cure and Malooley did not proximately cause McIntyre's death," and that "[t]his analysis necessarily leads to the conclusion that Appellants presented sufficient evidence to meet their burden and to shift to the Estate the burden of demonstrating the existence of a genuine issue as to causation." *Id.* at 317.

The Estate argued that expert opinion evidence did indeed place the issue of causation in controversy. *Id.* at 318. The Estate pointed out that only two of the doctors on the panel concluded that the actions of Dr. Cure and Dr. Malooley were not a proximate cause of McIntyre's death. *Id.* This court held that Dr. Shapiro's conclusion that he was unable to determine whether causation existed was "not evidence which tends to support the Estate's allegation that there was a causative nexus between conduct and death." *Id.* This court also held that "Dr. Shapiro's conclusion in fact could be used to support the contention that the Estate could not find an affirmative proponent as to proximate cause," and that "the Panel's Opinion, including Dr. Shapiro's separate opinion, logically supports only two arguments: 1) that there was no causation, or 2) that causation could not be determined." *Id.* The court held that Dr. Shapiro's opinion lends no support whatsoever to the argument that there was causation and that "it was incumbent upon the Estate to bring forth facts as to the actual existence of causation." *Id.* The court concluded:

> When, as here, a medical malpractice civil suit is filed after a medical review panel has issued an opinion which finds against the complainant upon the issue of causation, and *no member of the panel opines that causation does exist,* the complainant proceeds in considerable peril if he rests upon the factual allegations contained in his complaint. The complainant must do more than rest upon his complaint.

---

6. Ind.Code § 16–9.5–9–9 provided in part:
   Any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such expert opinion shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness.
   (Subsequently repealed by Pub. L. No. 2–1993, § 209 (eff. July 1, 1993)).

The record before us contains competent admissible expert opinion that there was no causation. The record is entirely devoid of evidence from which the trial court could reasonably infer a causal link between the appellants' actions and McIntyre's death. Absent such evidence, the trial court erred in denying the appellants' motions for summary judgment.

*Id.* at 319 (emphasis added).

Wagler argues that *Malooley* is distinguishable and points to the fact that the majority of the panel in *Malooley* "found that the health care provider breached the standard of care, but such breach was *not* a proximate cause of plaintiff's injuries," while here "the majority of the Panel found that Clarian breached the standard of care, but the evidence they reviewed did not allow them to rule out that Clarian's sub-standard care did not cause [Wagler's] injuries." Appellee's Brief at 12. We disagree.

Here, the majority of the panel was of the opinion that "it cannot be determined from the evidence whether [Clarian's] conduct was a factor of any resulting damage." Appellant's Appendix at 44. This language is strikingly similar to the language in Dr. Shapiro's opinion in *Malooley* that "it is not possible to determine from the evidence submitted, whether or not the conduct complained of with respect to Dr.

Cure and Dr. Malooley was or was not a factor of the resultant damages." *Malooley,* 597 N.E.2d at 316. As previously mentioned, the court in *Malooley* stated that "the Panel's Opinion, including Dr. Shapiro's separate opinion, logically supports only two arguments: 1) that there was no causation, or 2) that causation could not be determined." *Id.* at 318. Also, like in *Malooley,* no member of the panel here concluded that causation existed. We cannot say that *Malooley* is distinguishable on the basis that the majority of the panel in the present case concluded that it could not be determined from the evidence whether Clarian's conduct was a factor of any resulting damage.

Wagler also argues that pursuant to Ind. Code § 34–18–10–22(b), the medical review panel was required to make a finding that the conduct complained of was not a factor of the resultant damage, and "[b]ecause such a finding was not made after a review of all of the evidence, the only possible interpretation of the majority's Opinion is that there was *some* evidence of causation." *Appellee's Brief* at 11. Ind.Code § 34–18–10–22 [7] provides:

(b) After reviewing all evidence and after any examination of the panel by counsel representing either party, the panel shall, within thirty (30) days, *give one (1) or more of the following*

---

7. The relevant statute at the time of *Malooley* was Ind.Code § 16–9.5–9–7, which is almost identical to Ind.Code § 34–18–10–22 and provided:

After reviewing all evidence and after any examination of the panel by counsel representing either party, the panel shall, within thirty (30) days, render one or more of the following expert opinions which shall be in writing and signed by the panelists:

\* \* \* \* \* \*

(d) The conduct complained of was or was not a factor of the resultant damages.

If so, whether the plaintiff suffered: (1) any disability and the extent and duration of the disability, and (2) any permanent impairment and the percentage of the impairment.

*expert opinions*, which must be in writing and signed by the panelists:

\* \* \* \* \* \*

   (4) The conduct complained of was or was not a factor of the resultant damages....

(Emphasis added). We cannot say that Ind.Code § 34–18–10–22 prohibits a panelist on a medical review panel from concluding that it cannot be determined from the evidence whether the defendant's conduct was a factor of any resulting damage.

Based upon *Malooley,* we conclude that Clarian presented sufficient evidence to meet its burden by designating Dr. Cefali's opinion that Clarian's conduct was not a factor of the resultant damages,[8] which shifted to Wagler the burden of demonstrating the existence of a genuine issue as to causation.[9] *See Malooley,* 597 N.E.2d at 317; *see also Bonnes v. Feldner,* 642 N.E.2d 217, 220 (Ind.1994) (holding that the opinion of one member of a medical review panel was evidence sufficiently probative to withstand a motion for judgment on the evidence). We also conclude that the opinion of the majority of the medical review panel was not evidence which tends to support Wagler's allegation that there was a causative nexus between Clarian's conduct and Wagler's injuries.[10] *See Ma-*

*looley* 597 N.E.2d at 318. Thus, we next turn to whether Nurse Little's affidavit was admissible.

**B.  *Nurse's Affidavit***

   ■  Clarian argues that Nurse Little's affidavit is inadmissible. Wagler argues that "[t]o disregard Nurse Little's affidavit in this case would be to contravene Indiana's statutory scheme set forth in the Medical Malpractice Act, as well as ignore the practical role that nurses play in modern day medicine." Appellee's Brief at 10. The trial court found:

> On one hand, *Long v. Methodist Hosp. of Indiana, Inc.* [699 N.E.2d 1164 (Ind. Ct.App.1998), *trans. denied* ] finds that a nurse affidavit in response to an adverse medical review panel opinion on causation is not sufficient to defeat summary judgment. The court wrote that "... there is a significant difference in the education, training, and authority to diagnose and treat diseases between physicians and nurses.... Thus, we now hold that nurses are not qualified to offer expert testimony as to the medical cause of injuries." *Id.* at 1169. On the other hand, *Harlett v. St. Vincent Hospitals and Health Services* [748 N.E.2d 921 (Ind.Ct.App.2001) ] finds that nurses must be allowed to serve on medical review panels, and therefore would be

---

8.  We observe that Ind.Code § 34–18–10–23 provides in part that "[a] report of the expert opinion reached by the medical review panel is admissible as evidence in any action subsequently brought by the claimant in a court of law."

9.  Wagler argues that "the dissenting opinion from Dr. Cefali did not find that Clarian breached the standard of care, which rendered his opinion regarding causation redundant," and "[o]f course, Dr. Cefali could not opine that Clarian caused Natalie's injuries if he did not first opine that Clarian breached the standard of care." Appellee's Brief at 12. Wagler does not cite to authority for the proposition that a doctor on a medical review

panel is prohibited from concluding both that a defendant did not fail to meet the applicable standard of care and also that the conduct complained of was not a factor of the resultant damages.

10.  The trial court stated that *Hoskins v. Sharp,* 629 N.E.2d 1271 (Ind.Ct.App.1994), and *Bunch v. Tiwari,* 711 N.E.2d 844 (Ind.Ct. App.1999), "suggest that summary judgment on medical causation is only allowed upon *unanimous* medical review panel opinions." Appellant's Appendix at 19. We cannot say that *Hoskins* or *Bunch* stand for this proposition.

able to offer expert opinions as to causation, and presumably required to testify at trial under I.C. § 34–18–10–23 above. So, apparently a nurse can offer expert opinion on a panel (and must testify at trial if requested) but cannot offer expert opinion in opposition to a motion for summary judgment. This conflict is simply irreconcilable, and provides no functional common law rule about nurse testimony on causation. Moreover, *Linton v. Davis* [887 N.E.2d 960 (Ind.Ct. App.2008), *trans. denied*], adds to the confusion by finding that a registered nurse testifying in a medical malpractice case can testify both as a skilled lay witness and "... equally testify as an expert witness 'qualified by knowledge, skill, experience, training or education.' Ind. Evid. R. 702." *Id.* at 977 (note 6). There is currently no clearly applicable Indiana law showing if, how, or when, nurses can testify as experts.

Appellant's Appendix at 20 (footnote omitted). The trial court also stated:

Further consideration of the nurse affidavit is moot, but the Court also finds Indiana law to be contradictory and inconclusive regarding expert testimony from nurses. Therefore, the policy and purpose of summary judgment also precludes summary judgment on this ground.

*Id.* at 19–21.

On appeal, Clarian relies upon *Long v. Methodist Hosp. of Ind. Inc.*, 699 N.E.2d 1164, 1166 (Ind.Ct.App.1998), *trans. denied,* and Wagler argues that *Long* was "necessarily overruled" by *Harlett v. St. Vincent Hosp. & Health Services*, 748 N.E.2d 921, 923 (Ind.Ct.App.2001), *reh'g denied, trans. denied.* Appellee's Brief at 3.

In *Long,* Cheryl Long, as personal representative of the estate of Alma M. Furr, and Cash Furr (collectively "Cheryl") filed a complaint against The Methodist Hospitals, Inc. ("Methodist"). 699 N.E.2d at 1166. Methodist filed a motion for summary judgment based upon the opinion of the medical review panel. *Id.* Cheryl responded by submitting the affidavit of Barbara A. Parks, R.N., who testified that the nursing care of Methodist fell below the applicable standard of care when Methodist's nursing staff failed to follow the physician's orders. *Id.* The trial court denied Methodist's motion for summary judgment because Cheryl demonstrated a genuine issue of material fact as to whether Methodist violated the applicable standard of care and Methodist failed to provide any evidence demonstrating the absence of a genuine issue of material fact as to causation. *Id.* Consequently, Methodist filed a second motion for summary judgment along with the affidavit of a doctor who affirmed that Methodist's conduct did not cause Alma's injuries. *Id.* At the hearing on its motion, Methodist filed a motion to strike the affidavit of Nurse Parks. *Id.* The trial court granted both motions. *Id.*

On appeal, the court addressed "whether Nurse Parks may offer expert testimony as to the medical cause of Alma's injuries." *Id.* at 1168. The court cited *Stryczek v. Methodist Hosp., Inc.*, 694 N.E.2d 1186, 1189 (Ind.Ct.App.1998), *trans. denied,* which compared the licenses of physicians and nurses. *Id.* at 1168. Specifically, the court in *Stryczek* held:

Physicians receive unlimited licenses as to the entire medical field; registered nurses receive licenses which limit the services they may perform. *See* Ind.Code §§ 25–23–1–1.1 and 25–22.5–1–1.1. Specifically, physicians are authorized to engage in the "diagnosis, treatment, correction, or prevention of any disease...." I.C. § 25–22.5–1–1.1. Under this statute, diagnosis is defined as the examination of "a patient, parts

of a patient's body, substances taken or removed from a patient's body, or materials produced by a patient's body to determine the source or nature of a disease or other physical or mental condition...." I.C. § 25–22.5–1–1.1(c). Physicians are also authorized to engage in "the suggestion, recommendation or prescription or administration of any form of treatment, without limitation...." I.C. § 25–22.5–1–1.1(a)(1)(B). In contrast, registered nurses are limited to make nursing diagnoses. These diagnoses must be amenable to a nursing regimen, defined as "preventive, restorative, maintenance, and promotion activities which include meeting or assisting with self-care needs, counseling and teaching." I.C. § 25–23–1–1.1(d). In addition, registered nurses are limited to treatments which are amenable to a nursing regimen. Thus, there is a significant difference in the scope of their respective diagnostic and treatment authority.

*Id.* (quoting *Stryczek*, 694 N.E.2d at 1189). The court in *Long* commented on *Stryczek* by observing that "[b]ased upon this analysis and the difference in education and training between physicians and registered nurses, we held that nurses are not qualified to offer expert opinion as to the standard of care for physicians." *Id.*

■ The *Long* court then addressed "whether a nurse may offer expert testimony as to the medical cause of injuries generally." *Id.* at 1169. The court noted that "physicians are authorized to engage in the 'diagnosis, treatment, correction, or prevention of any disease ...,' whereas registered nurses are limited to make nursing diagnoses which must be amenable to a nursing regimen." *Id.* (quoting I.C. § 25–22.5–1–1.1). The court stated that "[b]ecause there is a significant difference in the education, training, and authority to diagnose and treat diseases between physicians and nurses, we hold that the determination of the medical cause of injuries, which is obtained through diagnosis, for purposes of offering expert testimony is beyond the scope of nurses['] professional expertise." *Id.* The court held that "nurses are not qualified to offer expert testimony as to the medical cause of injuries." *Id.* The court then concluded that Nurse Parks was not qualified to offer expert testimony on whether Methodist's conduct caused Alma's injuries. *Id.* The court also concluded that the trial court did not err in striking Nurse Parks's affidavit as to the issue of causation and that Nurse Parks's affidavit "could not have been used for the purposes of defending a motion for summary judgment on the issue of causation...." *Id.*

In *Harlett*, the court addressed whether the trial court erred in ordering the medical review panel chairman to dismiss a registered nurse panelist and replace her with a plastic surgeon. The court observed that the *Long* court "held that nurses are not qualified to offer expert testimony as to the medical cause of injuries or as to increased risk of harm" and "expressed no opinion as to a nurse's qualification to serve on a medical review panel." 748 N.E.2d at 925 (citing *Long* at 1169–1170). The court held that the Indiana Medical Malpractice Act provides that nurses, as health care providers, are qualified to serve on a medical review panel. *Id.* The court held that "[i]n light of this statutory authorization, we hold that the trial court erred in *expanding* the specific holding of *Long* to exclude the nurse from the medical review panel." *Id.* (emphasis added). The court noted that "[i]n so holding, we recognize that *Long* has implications with regard [to] a nurse's qualification to testify as an expert witness on certain matters." *Id.* The court also stated that "we believe that it is the pre-

rogative of the legislature, and not this court, to modify the Medical Malpractice Act." *Id.*

We cannot say that *Harlett* is in conflict with *Long.* Rather, the court in *Harlett* held that *Long* could not be *expanded* to the issue of whether a nurse could be a member of a medical review panel.[11]

Based upon *Long*, we conclude that Nurse Little's affidavit was inadmissible for the purpose of creating an issue of fact regarding whether Clarian's actions were the proximate cause of Wagler's injuries.[12]

In summary, we conclude that Clarian presented sufficient evidence to meet its burden by designating the opinion of the

---

11. Further, we cannot say that *Linton v. Davis*, 887 N.E.2d 960, 963 (Ind.Ct.App. 2008), *trans. denied*, affects our conclusion. In *Linton*, the court addressed whether the trial court abused its discretion by limiting the testimony of a nurse who was called as a skilled lay witness. The court found *Stryczek* to be inapposite because, unlike *Stryczek*, the nurse "intended to testify as to her own perceptions of the baby's fetal heart monitor strips from 7:30 till 10:00 p.m. and reasonable inferences derived from those perceptions." 887 N.E.2d at 976. The court held that the nurse should have been qualified as a skilled lay witness. *Id.* The court noted:

> Here, the record reflects that [the nurse] had not been disclosed as an expert witness. Accordingly, under the facts of this case, Dr. Linton attempted to qualify her as a skilled witness pursuant to Evid. R. 702. However, our opinion today should not be construed as a limitation on the qualification of nurses as expert witnesses under Ind. Evid. R. 702. A registered nurse holds a license issued by the State of Indiana and "bears primary responsibility and accountability for nursing practices based on specialized knowledge, judgment and skill derived from the principles of biological, physical, and behavioral sciences." I.C. § 25-23-1-1.1. As such, a registered nurse testifying in a medical malpractice case could equally testify as an expert witness "qualified by knowledge, skill, experience, training or education." Ind. Evid. R. 702.

*Id.* at 976 n. 6. The court in *Linton* did not address whether a nurse may offer expert testimony as to the medical cause of injuries. Thus, we cannot say that the statements in *Linton* conflict with the holding in *Long.*

12. Wagler cites *Velazquez v. Commonwealth of Virginia*, 263 Va. 95, 557 S.E.2d 213 (2002), *State v. White*, 340 N.C. 264, 457 S.E.2d 841 (1995), *cert. denied*, 516 U.S. 994, 116 S.Ct. 530, 133 L.Ed.2d 436 (1995), and *Gregory v. State*, 56 S.W.3d 164 (Tex.App.–

Houston[14th Dist.] 2001), *reh'g overruled, petition for discretionary review dismissed with per curiam opinion, cert. denied*, 538 U.S. 978, 123 S.Ct. 1787, 155 L.Ed.2d 667 (2003), in support of her argument that other jurisdictions allow a nurse to testify regarding medical causation. These cases involved criminal matters and not medical malpractice. Accordingly, we do not find them applicable. Wagler also cites *Gaines v. Comanche County Med. Hosp.*, 143 P.3d 203 (Okla.2006), *Mellies v. National Heritage, Inc.*, 6 Kan.App.2d 910, 636 P.2d 215 (1981), and *Maloney v. Wake Hosp. Systems, Inc.*, 45 N.C.App. 172, 262 S.E.2d 680 (1980), *review denied.* We find *Gaines* and *Mellies* distinguishable because they involved the cause of bedsores. *See Gaines*, 143 P.3d at 206 (holding that in all causes in which the issue of a nurse's expert testimony arose in response to inquiries concerning a patient's development of and the treatment for bedsores, all jurisdictions having addressed the issue allow the testimony); *Mellies*, 636 P.2d at 222 (holding that the issues of whether bedsores were contracted or made worse by the defendants was a question that could be resolved by a jury without the testimony of a medical expert and that "[s]ince this case involves primarily a nursing problem, we feel that nurses are experts under the facts of this case and that there was sufficient evidence as to all three negligence elements, even without a doctor's testimony, to establish a jury question as to whether there was negligence in this case"). We also observe that the court in *Gaines* noted that its holding was "narrow" and that the decision could not "be determined to have 'opened the floodgates' for nurses to testify as experts in malpractice causes brought against physicians." *Gaines*, 143 P.3d at 206 n. 10. To the extent that *Gaines*, *Mellies*, or *Maloney*, support an opposite conclusion than that already reached by this court in *Long*, we decline to follow them.

medical review panel including Dr. Cefali's opinion that Clarian's conduct was not a factor of the resultant damages, which shifted to Wagler the burden of demonstrating the existence of a genuine issue as to causation. The opinion of the majority of the medical review panel and Nurse Little's affidavit was not evidence which tends to support Wagler's allegation that there was a causative nexus between Clarian's conduct and Wagler's injuries. Accordingly, we conclude that the trial court erred by denying Clarian's motion for summary judgment.

For the foregoing reasons, we reverse the trial court's denial of Clarian's motion for summary judgment and remand with instructions to enter summary judgment in favor of Clarian.

Reversed and remanded.

MATHIAS, J., and BARNES, J., concur.